Case No. 21-11328

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

◆

### MARIUS BROWN,

Appellant-Plaintiff,

v.

### WRIGLEY MANUFACTURING COMPANY, LLC, MATT ARENDS, and FRANK SLOTTERBACK,

Appellees-Defendants.

◆

**On Appeal from the United States District Court for the
Northern District of Georgia
Atlanta Division
2:18-CV-00141-RWS**

---

### APPELLANT'S BRIEF

---

**Attorney for Appellant-Plaintiff:**
**Regina S. Molden**
**Georgia Bar No. 515454**
**T. Orlando Pearson**
**Georgia Bar No. 180406**
**Peachtree Center – Harris Tower, Suite 1245**
**233 Peachtree Street, NE**
**Atlanta, Georgia 30303**
**Telephone:  (404) 324-4500**
**Facsimile:  (404) 324-4501**
**Email:  rmolden@moldenlaw.com**
**Email:  topearson@moldenlaw.com**

**May 21, 2021**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

COMES NOW Appellant-Plaintiff Marius Brown ("Brown" or "Appellant") and, pursuant to Rule of the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit Rule") 26.1, certifies that, to the best of Brown's knowledge, the following is a complete list of the persons and entities that have an interest in the outcome of the above-captioned case:

Arends, Matthew

Brown, Marius

Choi, Hee Won, Former Counsel for Plaintiff-Appellant

Cooper, Maryfrances T., Counsel for Defendants-Appellees

Davis, Thomas R., Counsel for Defendants-Appellees

Fuller, Clay J., U.S. Magistrate Judge, Northern District of Georgia

Gallagher, Laura B., Counsel for Defendants-Appellees

Jennings, Kathleen J., Counsel for Defendants-Appellees

Klein, Rhonda L., Counsel for Defendants-Appellees

Mars, Incorporated

Molden, Regina S., Counsel for Plaintiff-Appellant

Pearson, Todd Orlando, Counsel for Plaintiff-Appellant

Slotterback, Frank

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Story, Richard W., U.S. District Judge, Northern District of Georgia

Wm. Wrigley Jr. Company, Inc.

Wrigley Jr. Company, Inc.

Wrigley Manufacturing Company, LLC

Brown certifies that, to the best of Brown's and Counsel's knowledge, no publicly traded company or corporation has an interest in the outcome of this case or appeal.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# **TABLE OF CONTENTS**

Table of Contents                                                            4

Table of Authority                                                           5

Statement Regarding Oral Argument                                            9

Statement of Jurisdiction                                                    10

I. Statement of Issues on Appeal                                            11

II.  Statement of the Case                                                  12

   A. Course of the Proceedings and Disposition in District Court        12

   B. Statement of Facts from the Record Below                            13

III.  Statement of the Standards of Review                                  32

IV.  Summary of Arguments                                                   33

V.  Argument and Citations of Authority                                     34

   A. District Court Erred When Weighing and Disregarding Evidence        34

   B. District Court Erred When Concluding Record Lacked Significantly     37
     Probative Evidence of Intentional Discrimination

   C. District Court Erred When Concluding Brown Failed to Establish       48
     *Prima Facie* Retaliation Claims

   D. District Court Erred When Concluding Brown Failed to Establish a     57
     Convincing Mosaic of Evidencing Showing Discriminatory Intent

VI.  Conclusion                                                             63

Certificate of Compliance                                                   64

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# <u>TABLE OF AUTHORITY</u>

| **<u>Statutes and Constitutional Provisions</u>** | **<u>Pages</u>** |
|---|---|
| 28 U.S.C. § 1291 | 10 |
| 28 U.S.C. § 1331 | 10 |
| 28 U.S.C. § 1367 | 10 |
| 42 U.S.C. § 1981 | 12, 48 |
| 42 U.S.C. § 2000e | 12, 48 |

| **<u>Federal Rules of Appellate Practice</u>** | **<u>Pages</u>** |
|---|---|
| Fed. R. App. P. 34 | 9 |
| Fed. R. App. P. 28 | 10-12, 32, 33 |

| **<u>Federal Rules of Civil Procedure</u>** | **<u>Pages</u>** |
|---|---|
| Fed. R. Civ. P. 56 | 32, 34 |

| **<u>Rules of the U.S. Court of Appeals for the Eleventh Circuit</u>** | **<u>Pages</u>** |
|---|---|
| Rule 26.1 | 2 |
| Rule 28-1 | 9-11, 32, 33 |

| **<u>Supreme Circuit Authority</u>** | **<u>Pages</u>** |
|---|---|
| <u>Anderson v. Liberty Lobby, Inc.,</u><br>477 U.S. 242, 106 S. Ct. 2505 (1986) | 32, 34 |
| <u>McDonnell Douglas Corp. v. Green,</u><br>411 U.S. 792, 93 S. Ct. 1817 (1973) | 37 |
| <u>Reeves v. Sanderson Plumbing Prods., Inc.,</u><br>530 U.S. 133, 120 S. Ct. 2097 (2000) | 32, 34 |

| **<u>Eleventh Circuit Authority</u>** | **<u>Pages</u>** |
|---|---|
| <u>Allen v. Tyson Foods,</u><br>121 F.3d 642 (11th Cir. 1997) | 32 |
| <u>Alvarez v. Royal Atl. Developers, Inc.,</u><br>610 F.3d 1253 (11th Cir. 2010) | 38, 56 |

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## **Eleventh Circuit Authority (continued)**                              **Pages**

Andrews v. Lakeshore Rehab. Hosp.,                                              48
140 F.3d 1405 (11th Cir. 1998)

Bass v. Bd. of Cnty. Comm'rs,                                    38, 42-43, 47, 51
256 F.3d 1095 (11th Cir. 2001)

Carter v. Three Springs Residential Treatment,                                  37
132 F.3d 635 (1998)

Chapter 7 Tr. v. Gate Gourmet, Inc.,                                            48
683 F.3d 1249 (11th Cir. 2012)

Crawford v. Carroll,                                                            48
529 F.3d 961 (11th Cir. 2008)

Furcron v. Mail Centers Plus, LLC,                                             37
843 F.3d 1295 (11th Cir. 2016)

Gay v. Airtran, Inc.,                                                           9
427 Fed. Appx. 743 (11th Cir. 2011)

Herndon v. Equitable Variable Life Ins. Co.,                                   9
325 F.3d 1251 (11th Cir. 2003)

Kragor v. Takeda Pharms. Am., Inc.,                                           38
702 F.3d at 1304 (11th Cir. 2012)

Lewis v. Union City,                                                          58
934 F.3d 1169 (11th Cir. 2019)

Meeks v. Comput. Assocs. Int'l,                                               56
15 F.3d 1013 (11th Cir. 1994)

Miles v. M.N.C. Corp.,                                                    40-41, 43
750 F.2d 867 (11th Cir. 1985)

## **Eleventh Circuit Authority (continued)**                          **Pages**

Pennington v. Huntsville,                                                    50
261 F.3d 1262 (11th Cir. 2001)


Rollins v. Fla. Dep't of Law Enf't,                                         49
868 F.2d 397 (11th Cir. 1989)


Sledge v. Goodyear Dunlop Tires N. Am. Ltd.,                    34-36, 42, 44
275 F.3d 1014 (11th Cir. 2001)


Smith v. Lockheed-Martin Corp.,                                             58
644 F.3d 1321 (11th Cir. 2011)


Steward v. Int'l Longshoreman's Ass'n Local No. 1408,                        9
306 Fed. Appx. 527 (11th Cir. 2009)


Strickland v. Norfolk S. Ry.,                                               34
692 F.3d 1151 (11th Cir. 2012)


Tebo v. Debary,                                                             49
784 Fed. Appx. 727 (11th Cir. 2019)


Thomas v. Cooper Lighting, Inc.,                                            54
506 F.3d 1361 (11th Cir. 2007)


Thompkins v. Morris Brown Coll.,                                  38, 40-41, 43
752 F.2d 558 (11th Cir. 1985)


Tippens v. Celotex Corp.,                                                   32
805 F.2d 949 (11th Cir. 1986)


Watkins v. Sverdrup Tech.,                                                  38
153 F.3d 1308 (11th Cir. 1998)


Warrior Tombigbee Transp. Co. v. M/V Nan Fung,                              34
695 F.2d 1294, 1299 (11th Cir. 1983)

**Eleventh Circuit Authority (continued)**                                    **Pages**

Webb-Edwards v. Orange Cnty. Sheriff's Office,                                      10
525 F.3d 1013 (11th Cir. 2008)

Wilson v. B/E Aerospace, Inc.,                                                      37
376 F.3d 1079 (11th Cir. 2004)

**Federal Appellate Authority**                                               **Pages**

EEOC v. Navy Fed. Credit Union,                                                    45
424 F.3d 397 (4th Cir. 2005)

Farrell v. Planters Lifesavers Co.,                                                45
206 F.3d 271 (3d Cir. 2000)

George v. Leavitt,                                                                 45
407 F.3d 405 (D.C. Cir. 2005)

Graefenhain v. Pabst Brewing Co.,                                                  45
827 F. 2d 13 (7th Cir. 1987)

Parrish v. Immanuel Med. Ctr.,                                                     45
92 F.3d 727 (8th Cir. 1996)

**Northern District of Georgia Authority**                                    **Pages**

Smith v. Wynfield Dev. Co.,                                                        50
451 F. Supp. 2d 1327 (N.D. Ga. 2006)

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to the Federal Rules of Appellate Procedure ("Appellate Rules") 34(a) and Eleventh Circuit Rule 28-1(c), Brown submits this Statement Regarding Oral Argument. "Any party may file . . . a statement explaining why oral argument should, or need not, be permitted."[1] Fed. R. App. P. 34(a)(1). Where the facts and legal arguments are adequately presented in the briefs and record, oral argument would not aid the decisional process. Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir. 2003) (*per curiam*); Gay v. AirTran Airways, Inc., 427 Fed. Appx. 743, 744 n.1 (11th Cir. 2011) (*per curiam*); Steward v. Int'l Longshoreman's Ass'n, Local No. 1408, 306 Fed. Appx. 527, 529 n.1 (11th Cir. 2009) (*per curiam*). Like Herndon, Gay, and Steward, the facts and legal arguments are adequately presented in the record and, thus, oral argument would not aid in the decisional process. As a result, Brown does not request oral argument, which would only delay this appeal.

---

[1] "Appellant's brief shall include a short statement of whether . . . oral argument is desired . . . ." 11th Cir. R. 28-1(c).

<u>Brown v. Wrigley Manufacturing Company, LLC, *et al.*</u>, No. 21-11328
Appellant's Brief

## <u>STATEMENT OF JURISDICTION</u>

Pursuant to Appellate Rule 28(b)(1) and Eleventh Circuit Rule 28-1(h), Brown submits this Statement of Jurisdiction. The above-captioned case is a direct appeal in a civil case from the summary judgment entered, on March 29, 2021, in the United States District Court for the Northern District of Georgia, Atlanta Division ("District Court"). (Appx., Doc. no. 89, Order).[2] Because the above-captioned case involves the laws of the United States, the District Court was vested with original jurisdiction pursuant to 28 U.S.C. § 1331, as well as supplemental jurisdiction related to the State law claims, involving the same nucleus of operative facts, pursuant to 28 U.S.C. § 1367. Following entry of the summary judgment, Brown timely filed, on April 15, 2021, a Notice of Appeal in the District Court. (Doc. no. 91, Notice). Because the District Court entered a final summary judgment, jurisdiction now lies with this Court pursuant to 28 U.S.C. § 1291. <u>Webb-Edwards v. Orange Cnty. Sheriff's Office</u>, 525 F.3d 1013, 1025 (11th Cir. 2008).

---

[2] Because each document cited herein is contained in the Appendix, in the interest of brevity, Brown will not include the Appendix citation in the remaining citations.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# I.    STATEMENT OF ISSUES ON APPEAL

Pursuant to Appellate Rule 28(b)(2) and Eleventh Circuit Rule 28-1(h), Brown submits the following Statement of the Issues presented for review:

(1)    Whether the Court erred when improperly weighing and disregarding the evidence?

(2)    Whether the Court erred when concluding the record lacked significantly probative evidence of intentional racial discrimination?

(3)    Whether the Court erred when concluding Brown failed to establish a retaliation claim?

(4)    Whether the Court erred when concluding Brown failed to establish a "convincing mosaic" of circumstantial evidence showing discriminatory intent?

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## II.    STATEMENT OF THE CASE

Pursuant to Appellate Rule 28(b)(3) and Eleventh Circuit Rule 28-1(i), Brown

submits the following Statement of the Case.

### A.    Course of the Proceedings and Disposition in the District Court

On August 24, 2018, Brown commenced the above-captioned case pursuant

to: (1) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et*

*seq.*, ("Title VII") for race discrimination and retaliation; (2) the Civil Rights Act of

1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981")

for race discrimination and retaliation; and (3) the laws of the State of Georgia for

negligent supervision and retention as well as, intentional infliction of emotional

distress. (Doc. no. 1, Compl.). Following amendment, the Court dismissed the

following claims: (a) Title VII claims prior to August 2017; (b) Section 1981 claims

prior to August 2016; and (c) the State tort claims. (Doc. no. 22, Am. Compl.; Doc.

no. 25, R&R; Doc. no. 31, Order). Subsequently, the Parties engaged in extensive

discovery. On February 1, 2021, the Magistrate Judge entered the Final Report and

Recommendation, recommending that the District Court grant Appellees' opposed

summary judgment and dismiss the above-captioned complaint. (Doc. no. 84, R&R).

Over Brown's Objections, on March 29, 2021, the District Court accepted and

adopted the R&R, entered summary judgment in favor of Appellees, and dismissed

the above-captioned case. (Doc. no. 86, Objections; Doc. no. 89, Order).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## B.     Statement of Facts from the Record

### 1.     Appellant Marius Brown

Brown is a forty (40) year old African-American male. (Doc. no. 74, Stmnt., Brown Aff. ¶ 3; Doc. no. 70, Vento Depo., pp. 60:14-15). Brown received a Bachelor's in Business Administration, Business Information Systems, from the University of West Georgia ("UWG"). (Stmnt., Brown Aff. ¶ 4, Ex. A-1, Resume; Brown Depo., pp. 10:2-24; Doc. no. 71, Da Silva Depo., pp. 83:5-6; Vento Depo., pp. 47:9-16). Subsequently, Brown worked as an Operator. (Stmnt., Brown Aff. ¶ 5, Ex. A-1, Resume; Doc. no. 81, Brown Depo., pp. 11:20-12:14).

### 2.     Appellee Wrigley Manufacturing Company LLC

Wrigley Manufacturing Company, LLC, ("Wrigley") is a gum manufacturing company with 16,000 employees worldwide. (Stmnt., Brown Aff. ¶ 5; Vento Depo., pp. 47:4-16). Wrigley operates a manufacturing plant in Flowery Branch, Georgia, ("Plant") with three (3) shifts. (Stmnt., Brown Aff. ¶¶ 6, 9; Brown Depo., pp. 12:18-13:19, 66:18-67:5; Vento Depo., pp. 47:17-22; Da Silva Depo., pp. 61:8-11). Each Shift has "Lines" staffed as follows: Supply Workers (entry level), Operators, Shift Leads, Process Leads, and Line Leads/Managers (highest level), who approve leaves and discipline associates. (Stmnt., Brown Aff. ¶ 9, Ex. A-6, Organizational Charts; Brown Depo., pp. 23:3-24:19; Vento, Depo., pp. 31:6-37:8; Da Silva Depo., pp. 18:25-20:6). Wrigley utilizes annual reviews for Associates and Performance

Development Plans ("PDPs"), wherein associates describe/update company skill sets, duties, responsibilities, and goals, which are approved by Line Managers. (Stmnt., Brown Aff. ¶¶ 10-11; Brown Depo., pp. 24:14-35:2, 42:9-45:18, 64:3-13; Vento Depo., pp. 38:2-39:10).  Also, Wrigley has a Recruitment and Selection Process ("Process")—candidates submit applications through an online portal before the Hiring Manager schedules an interview, if the application is approved by the Line Manager.  (Stmnt., Brown Aff. ¶ 13, Ex. A-8, My P&O Policy – Recruitment and Selection Process; Brown Depo., pp. 81:20-81:3, 82:4-15, 82:16-83:25, 84:9-11, 192:7-20; Vento Depo., pp. 101:16-102:17).  Although not referenced in the Process, Wrigley utilizes "interim positions"—when a position becomes open, management typically selects a Caucasian associate to gain experience and training while temporarily filling the position before the permanent candidate (typically the interim candidate) is selected to fill the position.  (Stmnt., Brown Aff. ¶¶ 13-14, Ex. A-8, Process;  Brown Depo., pp. 42:9-20, 79:21-80:9, 81:10-17, 188:6-189:5;  Vento Depo., pp. 52:16-54:9, 54:24-56:3; Da Silva Depo., pp. 38:25-39:21, 40:21-41:1).

### 3.    *Appellee Matt Arends*

Matt Arends ("Arends")—Caucasian male—began working at the Plant in 2008.  (Stmnt., Brown Aff. ¶ 8; Vento Depo., pp. 14:20-15:4; Da Silva Depo., pp. 15:23-16:1).  In October 2016, Arends became Plant Director.  (Stmnt., Brown Aff. ¶ 8; Vento Depo., pp. 14:20-15:4; Da Silva Depo., pp. 15:23-16:1).  As Director,

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Arends was responsible for, among other things, employment actions at the Plant.

(Stmnt., Brown Aff. ¶ 8, Ex. A-5, Factory Director Job Description).

### 4.    *Appellee Frank Slotterback*

Frank Slotterback—Caucasian male—began working at the Plant in 2006.

(Vento Depo., pp. 16:3-6).  Although Line Leaders preferably possess a Bachelor's

degree, from 2015 until 2018, Slotterback served as a Line Lead/Manager without a

college degree.   (Stmnt., Brown Aff. ¶ 7, Ex. A-4, Line Leader Job Description;

Brown Depo., pp. 25:14-24; Vento Depo., pp. 15:14-16:10; Da Silva Depo., pp.

16:2-4, 84:1-5).  Slotterback was responsible for, *inter alia*, employment actions at

the Plant.  (Stmnt., Brown Aff. ¶ 7, Ex. A-4, Line Leader Job Description).

### 5.    *Brown Hits the Glass-Ceiling at the Plant as Shift Lead*

On April 18, 2006, Brown began working at the Plant as a Machine Operator.

(Stmnt., Brown Aff. ¶ 6, Ex. A-3, New Hire Form; Brown Depo., pp. 12:18-13:19;

Vento Depo., pp. 47:17-22).   After Brown's applications in the Processing

Department were denied, (Stmnt., Brown Aff. ¶ 15; Brown, Depo., pp. 15:24-16:14),

without application or interview, Brown accepted a 3rd Shift Lead position in the

Wrapping Department.  (Stmnt., Brown Aff. ¶ 15, Ex. A-8, Process, Ex. A-9 Internal

Offer; Brown Depo., pp. 16:7-17:8; Vento Depo., pp. 49:6-13).   Brown was

responsible for, *inter alia*, directing work, assisting associates, and serving as the

associate liaison.  (Stmnt., Brown Aff. ¶ 15, Ex. A-10, Shift Lead Job Description;

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Vento Depo., pp. 36:21-37:8, 72:22-23). Unlike Caucasian Shift Leads, Brown also operated machines. (Stmnt., Brown Aff. ¶ 15). Nevertheless, Brown achieved and excelled as a Shift Lead. (Stmnt., Brown Aff. ¶ 15).

### 6. *Brown Laterally Transfers to 2nd Shift Lead in TAB Department*

On September 18, 2015, Brown accepted a 2nd Shift Lead position in the new TAB Department. (Stmnt., Brown Aff. ¶ 16, Ex. A-11, Personnel Change Notification; Brown Depo., pp. 17:14-25, 18:9-24). Wrigley replaced Brown in the Wrapping Department with Ken Euhl ("Euhl"), a Caucasian outside of the Plant who Brown trained before Euhl was promoted, six months later, to a Process Lead. (Stmnt., Brown Aff. ¶ 16). As the 2nd Shift Lead in the TAB Department, Brown reported to Slotterback and was responsible for, *inter alia*, overseeing/training associates, coverage, efficiency, quality, and safety, as well as operating machines. (Stmnt., Brown Aff. ¶ 17; Brown Depo., pp. 19:11-22:18; Vento Depo., pp. 72:22-23). Brown served as the Safety Champion and assisted with validating new equipment. (Stmnt., Brown Aff. ¶ 17, Ex. A-12, TAB Line Qualification E-mail; Brown, Depo., pp. 26:8-16).

### 7. *Brown Trains Other Leads And Supervises Other Lines*

Approximately one year after becoming Shift Lead, the other Shift Lead, Martin Smiley ("Smiley"), took another position and, thus, Brown supervised Smiley's Shift until Jonathan Holloman ("Holloman") replaced Smiley. (Stmnt.,

Brown v. Wrigley Manufacturing Company, LLC, et al., No. 21-11328
Appellant's Brief

Brown Aff. ¶ 19; Brown, Depo., pp. 29:18-24). Brown trained Holloman and supervised Holloman's Shift for months. (Stmnt., Brown Aff. ¶ 19; Brown, Depo., pp. 29:25-31:18). Similarly, Brown supervised and managed the Line until Parnessa Herring ("Herring") replaced Holloman. (Stmnt., Brown Aff. ¶ 19; Brown, Depo., pp. 32:2-33:10; Vento Depo., pp. 62:1-9). When the Shift Lead in the TAB Multi-Pack Line was absent, Brown was required to oversee the additional Line—no other Shift Leads were responsible for an additional Line for this amount of time. (Stmnt., Brown Aff. ¶ 19; Vento Depo., pp. 62:1-9).

### 8. *Brown Takes Additional Steps to Develop Professionally at Wrigley*

In May 2016, Brown completed the Crucial Accountability Course. (Stmnt., Brown Aff. ¶ 18, Ex. A-13, Certificate). Brown also completed approximately three (3) PDPs. (Stmnt., Brown Aff. ¶ 21; Brown Depo., pp. 42:22-43:3). After Brown submitted the 2016 PDP, Slotterback added (without sharing with Brown) certain subjective Manager Comments. (Stmnt., Brown Aff. ¶ 21, Ex. A-14, Shift Reports; Brown Depo., pp. 45:19-22, 45:23-46:14, 47:15-48:4; Da Silva Depo., pp. 84:6-85:4). Nevertheless, whenever faced with issues on the Line, Brown coached associates and notified senior management, who were authorized to take disciplinary actions. (Stmnt., Brown Aff. ¶ 21; Ex. A-15, Emails Concerning Attendance and Machine Operation; Brown Depo., pp. 67:6-74:3).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

### 9.    *Brown's Stellar Performance Warrants Merit Pay Increases*

Brown's annual performance ratings at the Plant were "meets expectations." (Stmnt., Brown Aff. ¶ 45, Ex. A-43, Performance Reviews; Brown Depo., pp. 35:1-7; Vento Depo., pp. 60:6-12; Da Silva Depo., pp. 83:19-22).  When rated as "exceeds expectations," Brown was described as the "pillar" or "TPM team."  (Stmnt., Brown Aff. ¶ 45; Brown, Depo., pp. 35:13-36:9).  In 2018 and 2019, Line Managers placed Brown on a TPM—Total Production Management—cost saving.  (Stmnt., Brown Aff. ¶ 45; Brown, Depo., pp. 36:7-41:15).  As a result of stellar performance, Brown consistently received annual pay increases.  (Stmnt., Brown Aff. ¶ 45, Ex. A-44, Merit Communication and Compensation Statement; Brown Depo., pp. 34:11-16).

### 10.    *Appellees Deny Brown's Application for Day Shift Line Lead on M-Line for Caucasian Mechanic Without 4-Year College Degree*

On February 21, 2017, Brown applied for the Day Shift Line Lead position on the M-Line.  (Stmnt., Brown Aff. ¶ 22, Ex. A-16, Job Req Spreadsheet; Brown Depo., pp. 85:1-15; Vento Depo., pp. 50:3-52:3; Da Silva Depo., pp. 31:3-9).  Because Brown participated in the start-up of the M-Line and performed that role on a different shift, Brown was qualified for the position.  (Stmnt., Brown Aff. ¶ 22; Brown Depo., pp. 85:11-24; Vento Depo., pp. 108:24-109:3; Da Silva Depo., pp. 31:19-32:2).  Initially, the Hiring Manager (Slotterback) stated Brown would not be interviewed because Slotterback was going to select another candidate and

Slotterback did not want Brown on Slotterback's Shift before, at the last minute, interviewing Brown.  (Stmnt., Brown Aff. ¶ 22; Brown Depo., pp. 87:6-88:1-17). When interviewed, Brown clearly, competently, and professionally responded to all questions based upon Brown's education, qualifications, and professional experience at the Plant while providing professional examples of Brown's ability to perform in the sought-after position.  (Stmnt., Brown Aff. ¶ 22).  Despite Brown's superior education, qualifications, experience, and employment in same position, Slotterback selected Chris Sexton ("Sexton")—Caucasian Mechanic without TAB experience or a 4-year college degree.  (Stmnt., Brown Aff. ¶ 22, Exs. A-17, A-18, A-19, Line Lead spreadsheet, education spreadsheet, and demographics spreadsheet; Brown Depo., pp. 89:14-90:14, 193:3-14; Vento Depo., pp. 106:15-108:1, 108:24-109:3; Da Silva Depo., pp. 31:10-18, 32:10-15, 34:10-11, 82:24-83:4).  Because Mechanics simply repaired machines, Brown had to train Sexton for the position. (Stmnt., Brown Aff. ¶ 22; Brown Depo., pp. 108:23-110:4, 193:15-194:8; Vento Depo., pp. 73:11-74:10).

### 11.    *Appellees Deny Brown's Application for Day Shift Lead in Processing Department For Caucasian with High School Education*

On March 23, 2017, Brown applied for the Day Shift Lead position in the Processing Department.  (Stmnt., Brown Aff. ¶ 23, Ex. A-16, Job Req Spreadsheet; Brown Depo., pp. 85:1-15, 90:19-25; Da Silva Depo., pp. 31:3-9, 32:21-23; Vento

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Depo., pp. 50:3-52:3).   Because Brown was a Shift Lead, Brown satisfied the

minimum requirements.  (Da Silva Depo., pp. 34:5-7).  Courtney McWaine was the

Hiring Manager.  (Brown Aff. ¶ 23; Brown Depo., pp. 91:1-5; Da Silva Depo., pp.

33:4-8).  Despite Brown's education, experience, performance, and qualification,

McWaine did not interview Brown because Slotterback did not approve the

application.  (Stmnt., Brown Aff. ¶ 23, Ex. A-20, Slotterback's Memorandum;

Brown Depo., pp. 92:15-23; Da Silva Depo., pp: 34-5-7).  Wrigley selected David

Ammons ("Ammons")—Caucasian with a high school education.  (Stmnt., Brown

Aff. ¶ 23, Ex. A-21, Line Lead ethnicity spreadsheet, Ex. A-22, Line Lead education

spreadsheet; Brown Depo., pp. 95:14-96:8; Da Silva Depo., pp. 32:21-25, 34:8-9,

82:24-83:1).  Although the Job Description states that the preferred qualification is

a two-year associates or technical degree, Ammons had neither.  (Stmnt., Brown Aff.

¶ 23, Ex. A-10, Shift Lead Job Description; Da Silva Depo., pp. 82:24-83:1).

### 12.    *Brown Discovers Slotterback Blocked Applications*

After applying for the Day Shift Lead position in the Processing Department,

Brown discovered Slotterback's "Manager Comments" in the 2016 PDP.  (Stmnt.,

Brown Aff. ¶ 24; Brown Depo., pp. 46:10-47:14, 52:8-22).  When inquiring about

the denial of an interview for the lateral position, Brown spoke with the Department

Manager, Herminio Reynoso ("Reynoso"), Juliana Domingues ("Domingues") in

HR, and Arends, all of whom referred Brown to Slotterback, who referenced the

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

"Manager Comments." (Stmnt., Brown Aff. ¶ 24, Ex. A-23, Attendance Awards; Brown Depo., pp. 53:2-58:14, 64:14-65:11, 134:19-135:19). After discussing the "Manager Comments," Slotterback and Brown agreed to disagree about the validity of the comments. (Stmnt., Brown Aff. ¶ 24; Brown Depo., pp. 54:14-21).

### 13.    *Brown Complains About Discrimination Without Remedial Action*

In or about 2016-2017, Wrigley reorganized the Human Resource Department and created the My People & Organization ("My P&O") portal used to submit and/or address work-related complaints and/or issues. (Stmnt., Brown Aff. ¶ 25; Brown Depo., pp. 111:21-112:6; Da Silva Depo., pp. 11:13-25, 25:7-26:13). On April 4, 2017, Brown filed a complaint with HR concerning the denials of employment applications through the My P&O portal, which directed Brown to contact Javier Chavez ("Chavez") and Anika Applewhite ("Applewhite"), who referred Brown to Domingues. (Stmnt., Brown Aff. ¶ 26; Brown Depo., pp. 111:15-114:10). Brown e-mailed Domingues to schedule a meeting, where they discussed the denial of employment applications in favor of lesser-qualified and lesser-experienced Caucasian candidates. (Stmnt., Brown Aff. ¶ 26, Ex. A-24, Meeting Email; Brown Depo., pp. 119:9-18). Domingues simply referred Brown back to Slotterback. (Stmnt., Brown Aff. ¶ 26; Brown Depo., pp. 128:23-133:11; Ex. A-25, Spreadsheet Concerning Brown's Complaint and the My P&O response; Brown Depo., pp. 119:21-122:22, 124:2-10).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

### 14.    *Brown Complains to Management About Racial Discrimination*

Following the meeting with Domingues, Brown complained to Reynoso about the denial of employment applications due to race and the lack of minorities in leadership positions.  (Stmnt., Brown Aff. ¶ 27; Brown Depo., pp. 124:11-126:3).  Reynoso simply referred Brown back to Slotterback.  (Stmnt., Brown Aff. ¶ 27; Brown Depo., pp. 125:8-126:9).  Similarly, Brown met with Arends concerning these issues.  (Stmnt., Brown Aff. ¶ 27, Ex. A-26, Brown's E-mail re Meeting with Arends; Brown Depo., pp. 127:1-10).

### 15.    *Appellees Deny Brown' Application for Shift Lead in Packaging Department in Favor of Caucasian Without College Degree*

In May 2017, Brown applied for a Shift Lead position in the Packaging Department.  (Stmnt., Brown Aff. ¶ 29, A-16, Job Req Spreadsheet; Brown Depo., pp. 99:19-21; Da Silva Depo., pp. 34:12-17).  Corey Adams ("Adams") was the Hiring Manager.  (Stmnt., Brown Aff. ¶ 29; Brown Depo., pp. 99:22-100:2).  Brown clearly, competently, and professionally interviewed for the position.  (Stmnt., Brown. Aff. ¶ 29).  After denying Brown's application, Adams stated the Panel felt that Brown was "ready" and "Keep on applying for positions."  (Stmnt., Brown Aff. ¶ 29; Brown Depo., pp. 100:3-103:10).  Wrigley selected Scott Mayfield ("Mayfield"), a Caucasian without a college degree.  (Stmnt., Brown Aff. ¶ 29, Ex. A-27, Line Lead ethnicity spreadsheet, Ex. A-28 Line Lead education spreadsheet;

<u>Brown v. Wrigley Manufacturing Company, LLC, *et al.*</u>, No. 21-11328
Appellant's Brief

Brown Depo., pp. 106:7-19; Da Silva Depo., pp. 34:18-35:5, 82:9-11).  Mayfield filled an unadvertised "interim position" and was given special projects/training related to the Shift Lead position.  (Stmnt., Brown Aff. ¶ 29).

### 16.    *Appellees Deny Brown' Application for Line Lead in Processing Department in Favor of Caucasian Without College Degree*

In October 2017, Brown applied for a Line Lead position in the Processing Department.  (Stmnt., Brown Aff. ¶ 30, Ex. A-16, Job Req Spreadsheet; Brown Depo., pp. 94:4-12; Da Silva Depo., pp. 35:8-12).  Blake Barron ("Barron") (Caucasian) was the Hiring Manager.  (Stmnt., Brown Aff. ¶ 30; Brown Depo., pp. 94:13-15; Vento Depo., pp. 16:17-22).  Brown clearly, competently, and professionally interviewed for the position.  (Stmnt., Brown Aff. ¶ 30).  Wrigley selected Jody Collins ("Collins"), a Caucasian from another plant without a college degree.  (Stmnt., Brown Aff. ¶ 30, Ex. A-29 Line Lead ethnicity spreadsheet, Ex. A-30, Line Lead educational spreadsheet; Brown Depo., pp. 94:16-95:13, 97:12-23; Da Silva Depo., pp. 35:19-36:6, 82:14-17).  Collins filled an "interim position" and was giving special training.  (Stmnt., Brown Aff. ¶ 30).  Barron stated that Brown did not have enough "passion" and advised Brown to obtain a Master's Degree, which was not a requirement of the position.  (Stmnt., Brown Aff. ¶ 30, Ex. A-31, Line Leader Job Description; Brown Depo., pp. 108:7-22; Da Silva Depo., pp. 82:14-17).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

### 17.  Appellees Deny Brown' Application for Process Lead in Processing Department for Caucasian Operator Without a Degree

On January 10, 2018, Brown applied for the Process Lead Day Shift position in the Processing Department.  (Stmnt., Brown Aff. ¶ 31, Ex. A-16, Job Req Spreadsheet; Brown Depo., pp. 104:18-22; Da Silva Depo., pp. 36:22-38:6).  Although Eyda Yancy was the Hiring Manager and Collins was on the interview panel.  (Stmnt., Brown Aff. ¶ 31; Brown Depo., pp. 104:23-105:2, 106:20-25; Da Silva Depo., pp. 82:9-17).  Wrigley afforded Christopher Joy ("Joy"), a Caucasian Operator without Shift Lead experience or a 4-year college degree, the "interim position."  (Stmnt., Brown Aff. ¶ 31, Ex. A-33, Line Lead ethnicity spreadsheet, Ex. A-34, Line Lead education spreadsheet; Da Silva Depo., pp. 38:15-17, 82:1-5).  Brown clearly, competently, and professionally interviewed for the position.  (Stmnt., Brown Aff. ¶ 31).  Based upon the "interim position," Wrigley selected Joy.  (Stmnt., Brown Aff. ¶ 31; Brown Depo., pp. 105:9-106:5; Da Silva Depo., pp. 36:22-38:6, 82:1-5).  Collins, who lacked a college degree, stated that Brown was not "technical enough" because the position required use of Excel.  (Stmnt., Brown Aff. ¶ 31; Brown Depo., pp. 107:13-108:6; Da Silva Depo., pp. 82:14-17).  Unlike Collins, Brown had Bachelor's in Business Administration (Business Information Systems) and years of experience as a Shift Lead, along with proficiency in Microsoft Suite.  (Stmnt., Brown Aff. ¶ 31, Ex. A-35, Brown Resume).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

### 18.    *Following Brown's Complaints, Appellees Take Employment Actions Against Brown in Addition to the Denial of Applications*

Following Brown's complaints about unlawful employment practices, Appellees significantly increased Brown's workload.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6).  Additionally, Appellees prohibited minority Shift Leads from working overtime, forcing Brown to simultaneously perform as an Operator and Shift Lead.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6, 175:11-23, 190:2-192:23).  Similarly, Appellees denied Brown assistance when Brown's Line was understaffed, which adversely affected safety.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6).  And, Appellees began to taint Brown's performance reviews.  (Stmnt., Brown Depo., pp. 175:2-10).

### 19.    *Brown Again Complains to HR About Racial Discrimination and Retaliation Without Remedial Action*

In January 2018, Brown complained about retaliation and discrimination.  (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 142:3-5).  Shortly thereafter, Slotterback called Brown into Slotterback's office, where Slotterback stated that the whole leadership team were disappointed that Brown submitted the complaint.  (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 146:7-148:10).  About a week later, Slotterback and Reynoso took Brown into an office, where they condescendingly compared Brown to a child and directed Brown to "tone it down."  (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 146:22:-150:3).  Despite safety concerns related to the

retaliatory conduct Brown raised during the meeting, Slotterback and Reynoso instructed Brown to continue operating the machines and performing as instructed. (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 149:10-151:13).  On February 16, 2018, Elizabeth Martin ("Martin"), Associate Relations Manager, reiterated Slotterback's and Reynoso's comments and advised Brown that the second complaint was closed. (Stmnt., Brown Aff. ¶ 36, Ex. A-36, Brown's February 2018 My P&O Response; Brown Depo., pp. 152:1-153:19).

### 20.    *Brown Files Charges of Discrimination with the EEOC*

On February 20 and 27, 2018, Brown filed Charges, alleging racial discrimination and retaliation, with the EEOC.  (Stmnt., Brown Aff. ¶ 38, Ex. A-37, Charges; Brown Depo., pp. 171:17-172:21).  Subsequently, Martin and Brown had a meeting, wherein Brown again complained about racial discrimination in employment practices.  (Stmnt., Brown Aff. ¶ 39, Ex. A-38, Martin's Memorandum; Brown Depo., pp. 174:5-21).  Martin simply responded, "How can we make it right?" before Brown advised Martin that he would discuss the matter with his attorney. (Stmnt., Brown Aff. ¶ 39; Brown Depo., pp. 172:25-173:17).

### 21.    *Wrigley Acknowledges Culture of Discrimination and Exclusion*

On March 8, 2018, the Inclusion and Diversity Team ("Team") conducted an Inclusion Survey ("Survey").  (Stmnt., Brown Aff. ¶ 40, Ex. A-39, E-mail and Survey).  Specifically, the Team asked about, *inter alia*, whether leaders valued

diversity and responded to discrimination, whether associates appreciated racial differences and interacted associations from different backgrounds interacted, and racial jokes. (Stmnt., Brown Aff. ¶ 40, Ex. A-39, Inclusion Survey E-mail and Survey). Even Martin, expressed the need to "promote a culture of inclusion at [Gainesville], which doesn't currently exist and creates ongoing issues between associates at the site." (Stmnt., Brown Aff. ¶ 40, Ex. A-40, Grievance and Complaint Spreadsheet; Vento Depo., pp. 123:1-124:19).

### 22.    *Appellees Demote Brown to Machine Operator After Litigation*

On August 24, 2018, Brown commenced this litigation. (Doc. no. 1, Compl.). Shortly thereafter, Wrigley announced a restructuring of the TAB department—no other department was restructured. (Stmnt., Brown Aff. ¶ 42; Brown Depo., pp. 154:23-155:5; Da Silva Depo., pp. 41:13-19). When evaluating the Shift Leads impacted by the restructuring (two of whom remained Shift Leads after the restructuring), Slotterback rated Brown the highest with respect to "conflict management." [3] (Stmnt., Brown Aff. ¶ 21; Da Silva Depo., pp. 78:5-20). Nevertheless, in December 2018, Brown was demoted to Operator while Slotterback was given another Line Manager position and James Mitch Bowman ("Bowman")— Caucasian Shift Lead who was displaced in a separate restructuring—was selected

---

[3] When blocking Brown's application, Slotterback cited *purported* "conflict management" issues.

as a Shift Lead instead of Brown.  (Stmnt., Brown Aff. ¶¶ 42-44, Ex. A-8 Process;

Brown Depo., pp. 155:10-156:0, 163:12-164:13, 166:11-167:23; Vento Depo., pp.

49:15-18).

### 23.    *Brown Finds a Noose Near Workspace Following Another Charge and the Litigation*

On Friday, July 10, 2020, Brown was deposed related to the Litigation.

(Stmnt., Brown Aff. ¶ 42).  Days later on Tuesday, July 14, 2020, a noose was found

in the washroom near Brown's work area.  (Stmnt., Brown Aff. ¶ 42).  According to

Appellees' the cleaning staff utilized nooses, which were never previously seen at

the Plant, to prop a door open.

### 24.    *Minorities Complaint About the Lack of Minorities in Management*

At the Plant, there are approximately 1000 employees and, generally, 25%-

40% of the employees (250-400) are African-Americans.  (Stmnt., Brown Aff. ¶ 48;

Vento Depo., pp. 14:5-19; Da Silva Depo., pp. 23:14-23).  Nevertheless, A.J. Culvert

("Culvert"), Patrice Hill, and Sydney Sutherland ("Sutherland") are the only

African-Americans who have been promoted into management—Culvert was

promoted to a Process Lead position after Brown commenced this matter.  (Stmnt.,

Brown Aff. ¶ 48; Vento Depo., pp. 40:3-41:3, 102:18-24; Da Silva Depo., pp. 21:8-

24:24).  Wrigley admits "it's unusual" that, despite the many African-American

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Shift Leads at the Plant, including Brown, over the decades, so few have been promoted into management.  (Stmnt., Vento Depo., pp. 103:1-24).

Sutherland—Brown's former supervisor and an African-American Line Manager at the Plant with a Master's Degree—was employed at the Plant from 2007 until 2018.  (Stmnt., Brown Aff. ¶ 47; Brown Depo., pp. 185:18-186:15).  Despite education and experience, Sutherland was denied promotion beyond Line Manager.  (Stmnt., Brown Aff. ¶ 47; Brown Depo., pp. 186:4-24; Da Silva Depo., pp. 22:20-23:8; Vento Depo., pp. 25:20-26:2).    Sutherland complained about racial discrimination and the lack of promotions/interviews prior to filing a Charge.  (Stmnt., Brown Aff. ¶ 47; Vento Depo., pp. 21:15-22:16, 99:22-101:15, Ex. 7, Sutherland Charge; Da Silva Depo., pp. 17:6-22).

Teresa Beckom ("Beckom")—African-American female—complained about racial discrimination at the hands of Slotterback.  (Da Silva Depo., pp. 74:13-20; Vento Depo., pp. 16:23-16, 18:15-21, 19:1-4, 23:16-24:4, 83:17- 84:21, 86:17-99:21, Exs. 4-6, Beckom Charges).    Starr Johnson ("Johnson")—African-American female—complained about racial discrimination and that her Shift Lead was mistreating her because she was an African-American.  (Da Silva Depo., pp. 75:2-15; Vento Depo., pp. 24:5-15).    Johnson and Beckom have complained that Slotterback and Slotterback's Shift Lead, Leon Willis, are racist against African-Americans.  (Vento Depo., pp. 17:17-22, 18:11-21, 19:5-8, 19:11-20:23).

### 25.    *Appellees Relax Employment Requirements to Facilitate the Promotion of Unqualified Caucasians at the Plant*

Wrigley relaxes job requirements to cater to non-African-American employment candidates.  (Stmnt., Brown Aff. ¶ 49; Brown Depo., pp. 181:20-182:15).  Despite requiring a Bachelor's degree, certain experience, and other qualifications for management positions, to cater to Caucasian candidates, Wrigley stopped requiring a Bachelor's degree for management positions.  (Stmnt., Brown Aff. ¶ 49; Brown Depo., pp. 181:20-182:15, 184:11-25).  Notwithstanding Wrigley's "Time-in Role" requirement, Wrigley routinely promotes Caucasian candidates, like Euhl, who lack the requisite time in a position.  (Stmnt., Brown Aff. ¶ 16; Vento Depo., pp. 82:18-83:13, 96:24-97:20).  For example, Slotterback, Sexton, and Collins served as a Line Leader without a college degree.  (Stmnt., Brown Aff. ¶ 49, Ex. A-4, Line Leader Job Description; Da Silva Depo., pp. 82:14-17, 83:2-4).

Collins, a Caucasian female who transferred from another plant without a college degree, was promoted from Shift Lead to Team Lead (Bachelor's Degree in Business/related field required) before becoming the Continuous Improvement Lead. (Stmnt., Brown Aff. ¶ 50, Ex. A-47, Team Leader Job Description, Ex. A-48, Collins' Associate Report; Da Silva Depo., pp. 82:14-17).  Joy, a Caucasian Operator who lacked Shift Lead experience or a 4-year college degree, was again promoted to an Engineer at Wrigley's Chattanooga facility.  (Stmnt., Brown Aff. ¶ 50; Da Silva

Depo., pp. 82:1-5).  After being promoted to Line Lead at the Plant, Mayfield—

Caucasian male without a college degree—was again promoted to Line Manager.

(Stmnt., Brown Aff. ¶ 50; Da Silva Depo., pp. 35:3-5, 82:9-11).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## III.    STATEMENT OF THE STANDARDS OF REVIEW

Pursuant to Appellate Rule 28(a)(8)(B) and Eleventh Circuit Rule 28-1(g),
Brown submits this Statement of the Standards of Review. "This Court reviews the
district court's grant of summary judgment *de novo*, applying the same standards
used by the district court."[4] Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir.
1997) (internal quotations and citations omitted) (reversing summary judgment
where evidence raised a question as to whether the plaintiff was subjected to a hostile
environment). "Summary judgment is such a lethal weapon, depriving a litigant of
a trial on the issue, caution must be used to ensure only those cases devoid of any
need for factual determinations are disposed of by summary judgment." Tippens v.
Celotex Corp., 805 F.2d 949, 952-53 (11th Cir. 1986).

---

[4] Summary judgment is proper only where no genuine issues of material fact and the
moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
Resolving all doubts in favor of the non-movant, courts must make a *de novo*
determination as to "whether a fair-minded jury could return a verdict for the
plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
252, 106 S. Ct. 2505 (1986). To that end, "the evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in [her] favor." Id. at 255.
Courts may not make any credibility determinations or attempt to weigh evidence.
Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097
(2000); see Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of
evidence, and the drawing of legitimate inferences from the facts are jury functions,
not those of a judge.").

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# IV.   SUMMARY OF ARGUMENTS

Pursuant to Appellate Rule 28(a)(7) and Eleventh Circuit Rule 28-1(j), Brown

submits the following Summary of Arguments:

(1)    The District Court erred when improperly weighing and disregarding

evidence in the record, which establishes discrimination and retaliation;

(2)    The District Court erred when concluding the record lacked

significantly probative evidence of intentional discrimination;

(3)    The District Court erred when concluding Brown failed to establish a

*prima facie* retaliation claim; and

(4)    The District Court erred when concluding Brown failed to establish a

"convincing mosaic" of evidence demonstrating discrimination.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# V.    ARGUMENT AND CITATIONS OF AUTHORITY

## A.    The District Court Erred When Weighing and Disregarding the Evidence

The District Court concluded that it evaluated the record in accordance with the applicable principles.  (Doc. no. 85, Order, pp. 3-5).  However, summary judgment is only proper where there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c).  Accepting the evidence, resolving doubts, and drawing justifiable inferences in favor of the non-movant, if a fair-minded jury could return a verdict in favor of the non-movant, summary judgment is improper.  Anderson, 477 U.S. 242 at 252-255.  Courts may not make credibility determinations or weigh evidence. Reeves, 530 U.S. at 150-51; Strickland v. Norfolk S. Ry., 692 F.3d 1151, 1162 (11th Cir. 2012).  Indeed, the summary judgment cardinal rule is that courts can neither resolve the facts nor reconcile the issues, but only look to ascertain that there is an issue.  Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1299 (11th Cir. 1983).

Sledge v. Goodyear Dunlop Tires N. Am. Ltd., 275 F.3d 1014 (11th Cir. 2001) (*per curiam*) is instructive concerning improperly weighing and disregarding evidence related to summary judgment.  In Sledge, the African-American plaintiff claimed that Goodyear refused to promote based upon race.  Sledge, 231 F. Supp. 2d at 1015.  When improperly granting summary judgment on the ground that the

<u>Brown v. Wrigley Manufacturing Company, LLC</u>, <u>et al.</u>, No. 21-11328
Appellant's Brief

plaintiff failed an examination and, thus, could not establish qualification for the

position, this Court explained,

> A party seeking summary judgment must demonstrate that there is no
> genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.  In assessing whether the
> movant has met its burden, the courts should view the evidence and all
> factual inferences therefrom in the light most favorable to the party
> opposing the motion and all reasonable doubts about the facts should
> be resolved in favor of the non-movant.

<u>Id.</u> at 1019 (internal quotations and citations omitted).  When granting summary

judgment, the court focused on the plaintiff's failure to pass a written examination,

*i.e.*, qualification.  <u>Id.</u> at 1018-19.  However, had the court focused on other facts, it

would have concluded that a reasonable jury could have still found the plaintiff was

qualified and the exams were merely a pretext for discrimination.  <u>Id.</u> at 1019.

Indeed, only 1 of the 107 Mechanics were African-American, the plaintiff was

denied interviews without reason, the plaintiff's performance established

qualification, and the selected candidate failed the exam.  <u>Id.</u> at 1019-20.  Because

what transpired reinforced the notion that the exam was mere pretext, the evidence

of discrimination was compelling and summary judgment was improper.  <u>Id.</u> at 1020.

Like <u>Sledge</u>, without improperly weighing or disregarding evidence, the

District Court would have also found compelling evidence of discrimination and

retaliation.  For example, when accepting Appellees' pretextual bases for failing to

promote Brown, the District Court consistently accepted thinly veiled, subjective

<u>Brown v. Wrigley Manufacturing Company, LLC</u>, *et al.*, No. 21-11328
Appellant's Brief

comments, *e.g.*, "ready" and "passion," concerning Brown's interview performances and *purported* qualifications while wholly ignoring the Caucasians' facial lack of basic qualifications, Appellees' use of "interim positions" outside of the Process and violation hiring procedures, as well as Browns' superior qualifications, performance at the Plant. Similar to <u>Sledge</u> where the exam was pretext for discrimination, notwithstanding *purported* subjective interview performances evaluated by often lesser-qualified Caucasians, Brown was consistently denied lateral positions, Brown was often required to train the selected candidates, and Brown's superior education and performance clearly establish pretext. And akin to <u>Sledge</u>, the record establishes a lack of African-Americans in management at the Plant, even prompting Wrigley's HR to investigate discrimination while acknowledging a culture of discrimination and exclusion. Over the years, African-Americans have consistently complained about Appellee's discrimination.

When granting summary judgment, the District Court asserts that evidence was not disregard because the Report and Recommendation was lengthy and the Magistrate Judge discussed the evidence proffered by Appellant. (Doc. no. 85, Order, pp. 5-6). However, rather than accepting the record, resolving doubts, and drawing inferences in favor of Brown, the District Court favored Appellees' subjective, contradicted evidence while disregarding evidence revealing Appellees' obvious pattern of discrimination and retaliation. Like <u>Sledge</u>, merely discussing

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Brown's evidence while focusing on the employer's evidence cannot form the basis

of summary judgment.  Due to conflicting evidence, the District Court should have

viewed the evidence in the light most favorable to the Brown, the non-moving party

and drew all reasonable inferences in Brown's favor. <u>Furcron v. Mail Centers Plus,</u>

<u>LLC</u>, 843 F.3d 1295, 1304 (11th Cir. 2016).

**B.    The District Court Erred When Concluding the Record Lacked Significantly Probative Evidence of Intentional Discrimination**

The District Court erred when concluding Brown's racial discrimination

claims fail for lack of significantly probative evidence that Appellees' proffered

reasons for the denial of employment positions were pretextual.  (Doc. no. 85, Order,

pp. 4-8).  Under the applicable framework, *prima facie* discrimination is shown by

membership in a protected group, adverse employment action, more favorable

treatment of similarly-situated employees outside the protected class, and

qualification for the position. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792,

800, 802 93 S. Ct. 1817 (1973); <u>see also</u> <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d

1079, 1089 (11th Cir. 2004) (explaining that, alternatively, a plaintiff may show that

other equally or less-qualified employees outside the class were promoted).[5]  The

---

[5] In this regard, subjective evaluations involving Caucasian supervisors provide a ready mechanism for discrimination and, thus, subjective evaluations cannot be relied upon by an employer to defeat the *prima facie* case.  <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 644 (1998).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

*prima facie* claim creates a presumption of discrimination, shifting the burden to the

employer to proffer legitimate a, non-discriminatory reason for the employment

action, which may be discredited as pretextual.  Id. at 802-805.

With regard to pretext, "the plaintiff has the opportunity to come forward with

evidence . . . sufficient to permit a reasonable factfinder to conclude that the reasons

given by the employer were not the real reasons for the adverse employment

decision."  Kragor v. Takeda Pharms. Am., Inc., 702 F.3d 1304, 1308-09 (11th Cir.

2012).    Pretext is demonstrated by weakness, implausibility, inconsistency,

incoherency, or contradiction in the proffered reason for the action that a reasonable

factfinder could find them unworthy of credence.  Alvarez v. Royal Atl. Developers,

Inc., 610 F.3d 1253, 1265 (11th Cir. 2010); Watkins v. Sverdrup Tech., 153 F.3d

1308, 1314 (11th Cir. 1998).  "[O]bviously, the more subjective the qualification

sought  and  the  more subjective  the  manner  in  which  it  is  measured,  the  more

difficult will be defendant's task in meeting the burden . . . ."  Thompkins v. Morris

Brown Coll., 752 F.2d 558, 564 n.16 (11th Cir. 1985).

Bass v. Bd. of Cnty. Comm'rs, 256 F.3d 1095 (11th Cir. 2001) is instructive

concerning pretext in subjective interview panels.  In Bass, the interview panel

comprised of members who were not qualified for the position selected a candidate

who also did not satisfy the requirements instead of the qualified plaintiff.  Bass, 256

F.3d 1098-1101.  Upon being denied, the plaintiff was given the choice of being

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

demoted or laid-off, prompting the plaintiff to select demotion.  <u>Id.</u> at 1101.
Addressing poor interview performance, this Court explained, "[I]n order for a
subjective reason to constitute a legal sufficient, legitimate, nondiscriminatory
reason, the defendant must articulate a clear and reasonably specific factual basis
upon which it based its subjective opinion."  <u>Id.</u> at 1105-06.  Like the above-
referenced case, the plaintiff established pretext through evidence of, *inter alia*, a
system to create leeway to promote minorities, promotion of lesser-qualified
candidates, and deviation from standard procedure.  <u>Id.</u> at 1106-09.

### 1.     *Examination of the Whole Record Establishes Pretext*

Appellees contended that Slotterback did not support Brown's February and
March 2017 applications based on *purported* deficiencies in the Manager Comments.
(Doc. No. 68-1, Memo., pp. 15-16, 18-19).  However, when finding the lack of
pretext evidence, the District Court failed to address that any *purported* conflict
issues were caused by Wrigley's exclusion culture.  (Stmnt., Brown Aff. ¶ 40, Ex.
A-39; Vento Depo., pp. 123:1-124:19).  When accepting Appellees' evidence related
to *purported* conflict management, the District Court failed to recognize that Brown
was not authorized to remedy associate issues and Brown was rated as "meets
expectations" despite periods with new associates and inoperable machines.  (Stmnt.,
Brown Aff. ¶ 45, Ex. A-43, Performance Reviews; Brown Depo., pp. 35:1-7; Vento
Depo., pp. 60:6-12; Da Silva Depo., pp. 83:19-22).  Although *purported* conflict

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

management skills were cited as the reason to oppose Brown's applications, the District Court lent no weight to the fact that, when evaluating the Leads impacted by the restructuring, Slotterback rated Brown the highest with respect to "conflict management." (Da Silva Depo., pp. 78:5-20). And, despite *purported* conflict management issues, Brown remained Lead for years, rated as "meets expectations," received annual merit pay increases, and interviewed for multiple promotions. Finally, based upon the consistent complaints of race discrimination inflicted by Slotterback, the *subjective* Manager Comments are problematic. Miles v. M.N.C. Corp., 750 F.2d 867, 871 (11th Cir. 1985); Thompkins, 752 F.2d at 564 n.16.

Turning to the October 2017 Line Lead position, Appellees contended that Brown was not "ready" based on Adams' *subjective* description of interview responses. (Doc. no. 68-1, Memo., pp. 16, 19). However, Brown clearly, competently, and professionally interviewed for the position. (Stmnt., Brown. Aff. ¶ 29). Adams' assertions are in stark contrast with Brown's favorable reviews, merit-based pay increases, and Wrigley's selection of Brown to train other Leads and manage multiple Lines, as well as Brown's placement on the TPM Team. (Stmnt., Brown Aff. ¶¶ 19, 45, Exs. A-43, A-44; Brown Depo., pp. 29:18-31:18, 32:2-33:10, 34:11-16, 35:1-7, 36:7-41:15; Vento Depo., pp. 60:6-12, 62:1-9; Da Silva Depo., pp. 83:19-22). When finding the lack of pretext evidence, the District Court ignored Adams's *subjective* assertion lacks any clear and specific factual basis.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Following the interview, Adams merely stated that Brown was not selected because the Panel did not feel that Brown was "ready." (Stmnt., Brown Aff. ¶ 29; Brown Depo., pp. 100:3-102:2). However, Appellees promoted Mayfield, who lacked a college degree and required an unadvertised "interim position" outside the Policy. (Stmnt., Brown Aff. ¶ 29, Exs. A-27, A-28; Brown Depo., pp. 106:7-19; Da Silva Depo., pp. 34:18-35:5, 82:9-11).

With regard to the October 2017 Line Lead position, Appellees contended that, as described by Barron (Caucasian), Brown's interview failed to demonstrate a "readiness" or describe Brown's "influence," "drive," or "impact." (Doc. no. 68-1, Memo., pp. 16-19). Again, *subjective* assertions without any reference to specific questions and responses fail to satisfy the clear and specific standard while providing a ready mechanism for discrimination. Miles, 750 F.2d at 871; Thompkins, 752 F.2d at 564 n.16. Moreover, the District Court ignored that Barron's *subjective* assertions are inconsistent with the fact that Brown worked for Wrigley for almost 15 years, pursued management positions, trained Leads and supervised multiple Lines, completed leadership training and 3 PDPs, participated in TPM team while serving as a Safety Champion, and validated/qualified new machines. (Stmnt., Brown Aff. ¶¶ 4, 6, 17, 19, 45, Exs. A-1, A-3, A-12; Brown Depo., pp. 10:2-24, 12:18-13:19, 26:8-16, 29:18-31:18, 32:2-33:10, 36:7-41:15, 42:22-43:3; Da Silva Depo., pp. 83:5-

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

6; Vento Depo., pp. 47:7-22, 62:1-9).  Again, akin <u>Sledge</u>, viewing the entire record

and not simply accepting the proffered reasons created a question of fact.

Like <u>Bass</u>, the District Court disregarded that Wrigley promoted a lesser-

qualified Caucasian candidate, Collins, who lacked a college degree or experience

at the Plant.  (Stmnt., Brown Aff. ¶ 30, Ex. A-29 Line Lead ethnicity spreadsheet,

Ex. A-30, Line Lead educational spreadsheet; Brown Depo., pp. 94:16-95:13, 97:12-

23; Da Silva Depo., pp. 35:19-36:6, 82:14-17).  And, the District Court apparently

gave no weight to the fact that Wrigley deviated from the Policy while utilizing a

system to create leeway—affording Collins an unadvertised "interim position."

(Stmnt., Brown Aff. ¶ 30).  Moreover, the District Court was unconcerned with the

fact that, when explaining the decision to promote Collins (no college degree)

instead of Brown (college degree), Barron advised Brown to obtain a Master's

degree, which was not mentioned in the Job Description.  (Stmnt., Brown Aff. ¶ 30;

Brown Depo., pp. 108:7-22; Da Silva Depo., pp. 82:14-17).

Similarly, looking at the January 2018 Process Lead position, Appellees

*purportedly* denied Brown's application because, as described by Collins (Caucasian

Manager without a college degree), Brown did not show "interest or initiative in

reintroducing himself to this department" and Brown was not "ready."  (Stmnt., Doc.

no. 68-1, Memo., pp. 17-19).  However, Brown's interview was clear, competent,

and professional.  (Stmnt., Brown Aff. ¶ 31).  Subsequently, Collins simply stated

that Brown was not "technical enough" because the position required use of Excel, despite Brown's Bachelor's in Business Administration (Business Information Systems) and Microsoft Suite proficiency. (Stmnt., Brown Aff. ¶ 31, Exs. A-1, A-35; Brown Depo., pp. 107:13-108:6; Da Silva Depo., pp. 82:14-17). *Ostensibly*, the District Court overlooked the fact that these *subjective* and unsupported comments by a Caucasian decision-maker without a degree concerning an African-American candidate with a degree were problematic as a ready mechanism for discrimination. Miles, 750 F.2d at 871; Thompkins, 752 F.2d at 564. And, as discussed, *supra*, Collins' *subjective* assertions of (a) fail to satisfy the clear and specific requirement and (b) are inconsistent with Brown's record at the Plant.

Like Bass, Wrigley promoted a lesser-qualified Caucasian Operator with limited Plant experience, Joy. (Stmnt., Brown Aff. ¶ 31, Exs. A-33, A-34; Da Silva Depo., pp. 38:15-17, 82:1-5). Conversely, Brown was an experienced supervisor with a 4-year college degree and stellar professional history at the Plant. Nevertheless, the District Court was unmoved by the fact that Joy jumped Brown in the Plant's hierarchy while violating the "Time-in Role" requirement. (Stmnt., Brown Aff. ¶¶ 9, 16, Ex. A-6; Vento Depo., pp. 31:6-37:8, 82:18-83:13, 96:24-97:20, Da Silva Depo., pp. 18:25-20:6). However, to facilitate the pre-selection of the lesser-qualified Caucasian lacking the necessary education or experience, Wrigley again created leeway in the system by affording Joy an unadvertised "interim

position." (Da Silva Depo., pp. 38:15-20). Viewed as a whole, the record clearly evidences as pattern of violating the Process to promote and hire lesser-qualified Caucasians over Brown.

### 2.    *The District Court's Reasons for Disregarding Evidence of Pretext*

Despite the fact that the entire record (not just the evidence proffered by Appellees) clearly created questions of fact, the District Court asserted several reasons for the conclusion that no reasonable jury could find pretext. While acknowledging Brown's superior education, the District Court apparently lent no weight to this salient fact. (Doc. no. 85, Order, p. 6). Brown possesses a Bachelor's in Business Administration, Business Information Systems. (Stmnt., Brown Aff. ¶ 4, Ex. A-1, Resume; Brown Depo., pp. 10:2-24; Da Silva Depo., pp. 83:5-6; Vento Depo., pp. 47:9-16). Even Appellees concede that each selected Caucasian possessed less education compared to Brown. (Stmnt., Brown Aff. ¶ 34; Da Silva Depo., pp. 83:16-18). Although education was important because each position had certain educational requirements, the District Court attached no importance when concluding the record lacked any evidence of pretext.

Next, the District Court asserted that Brown overstated his job performance because, in 2017, Brown rated a "meets expectations" in 2017 and *purportedly* needed improvement in conflict management. (Doc. no. 85, Order, p. 6). However, like <u>Sledge</u>, the District Court simply ignored the entire record. While serving as a

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Shift Lead, Brown qualified/validated machines, developed new Operators, updated training modules, led the Planning Committee, and served as Safety Champion. (Stmnt., Brown Aff. ¶¶ 15-17, Ex. A-12, TAB Line Qualification E-mail; Brown, Depo., pp. 26:8-16).   Moreover, Brown repeatedly trained other Shift Leads and supervised multiple Lines.  (Stmnt., Brown Aff. ¶ 19; Brown, Depo., pp. 29:25-31:18, 32:2-33:10; Vento Depo., pp. 62:1-9).    With regard to *purported* conflict management issues, in May 2016, Brown completed the Crucial Accountability Course.  (Stmnt., Brown Aff. ¶ 18, Ex. A-13, Certificate).   In addition to "meets expectations" ratings, (Stmnt., Brown Aff. ¶ 45, Ex. A-43, Performance Reviews; Brown Depo., pp. 35:1-7; Vento Depo., pp. 60:6-12; Da Silva Depo., pp. 83:19-22), when Brown was rated as "exceeds expectations," Brown was described as the "pillar" or "TPM team."[6]  (Stmnt., Brown Aff. ¶ 45; Brown, Depo., pp. 35:13-36:9). As a result of stellar performance, Brown has consistently received annual pay

---

[6] Positive performance reviews "are certainly a relevant factor in determining pretext." See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 407–08 (4th Cir. 2005) (finding evidence of pretext where there were  positive annual performance evaluations); see also Parrish v. Immanuel Med. Ctr., 92 F.3d 727, 733 (8th Cir. 1996) (finding that positive performance evaluation is a consideration when ruling that the plaintiff established pretext); Graefenhain v. Pabst Brewing Co., 827 F. 2d 13, 15, 19 (7th Cir. 1987) (finding that the employee's good performance review received two months before firing is relevant to showing pretext); George v. Leavitt, 407 F.3d 405, 414 (D.C. Cir. 2005) (holding that disparity between a positive performance review and performance-based termination would be sufficient to raise a material factual dispute regarding pretext in some cases).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

increases.   (Stmnt., Brown Aff. ¶ 45, Ex. A-44, Merit Communication and

Compensation Statement; Brown Depo., pp. 34:11-16).  Despite the District Court's

assertion, the whole record establishes Browns' stellar professional performance.

Then, the District Court asserts that Hiring Panels comprised of different

managers undercuts assertions of pretext.  (Doc. no. 89, Order, pp. 6-7).  However,

this ignores the fact that, without the support of Brown's Line Manager

(Slotterback), applications are dead in the water.  (Stmnt., Brown Aff. ¶ 13; Brown

Depo., pp. 82:16-83:25, 84:9-11, 192:7-20; Vento Depo., pp. 101:16-102:17).  And,

the Hiring Panels are irrelevant at the Plant, where the sought-after positions are

consistently awarded to Caucasian candidates in unadvertised "interim positions."

(Stmnt., Brown Aff. ¶ 14; Brown Depo., pp. 79:21-80:9, 81:10-17, 188:6-189:5;

Vento Depo., pp. 52:16-54:9, 54:24-56:3; Da Silva Depo., pp. 39:1-12, 40:21-41:1).

Moreover, the Hiring Managers were either Caucasian and/or offered subject

reasons for the denial of positions.  (Stmnt., Brown Aff. ¶¶ 22, 29-31; Brown Depo.,

pp. 87:6-88:1-17, 94:13-15, 99:22-100:2, 104:23-105:2, 106:20-25, 107:13-108:6;

Da Silva Depo., pp. 82:9-17).  Notably, the District Court's conclusions concerning

the different Hiring Panels ignores Wrigley's admitted culture of exclusion at the

Plant.  (Stmnt., Brown Aff. ¶ 40, Ex. A-40, Grievance and Complaint Spreadsheet;

Vento Depo., pp. 123:1-124:19).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Finally, the District Court concluded that the subjective interview comments supported summary judgment. (Doc. no. 89, Order, p. 7). However, as discussed in Bass, *supra*, for subjective reasons to constitute legitimate, non-discriminatory reasons, the employer must articulate a clear and reasonably specific factual basis upon which it based its subjective opinion. When initially refusing to interview Brown for the Day Shift Line Lead position on the M-Line, Slotterback initially stated that he did not want Brown on Slotterback's Shift. (Stmnt., Brown Aff. ¶ 22; Brown Depo., pp. 87:6-88:1-17). With respect to the Shift Lead position in Packaging, Adams merely stated that the Panel did not feel that Brown was "ready," (Stmnt., Brown Aff. ¶ 29; Brown Depo., pp. 100:3-102:2), whatever that means. Turning to the Line Lead position in Processing, Barron merely stated that Brown did not have enough "passion" while instructing Brown to obtain a Master's Degree despite selecting Collins, who did not possess a college degree. (Stmnt., Brown Aff. ¶ 30, Ex. A-31, Line Leader Job Description; Brown Depo., pp. 108:7-22; Da Silva Depo., pp. 82:14-17). When denying the Process Lead Day Shift position, Yancy stated Brown was not "technical enough" for a position requiring the use of Excel, (Stmnt., Brown Aff. ¶ 31; Brown Depo., pp. 107:13-108:6; Da Silva Depo., pp. 82:14-17), even though Collins lacked a college degree and Brown had a Bachelor's in Business Administration (Business Information Systems). Had the District Court afforded proper weight to the entire record, pretext was clear.

## C.     The District Court Erred When Concluding Brown Failed to Establish *Prima Facie* Retaliation Claims

The District Court erred when concluding Brown Failed to establish a *prima facie* case of retaliation because (1) Brown failed to engage in statutorily protected activities in the April 2017 and January 2018 meetings and (2) there was insufficient evidence establishing a causal connection between Brown's informal complaints, the Charge, and this litigation and the subsequent adverse actions.  (Doc. no. 85, Order, pp. 8-11).   As the Court knows, Title VII and Section 1981 prohibit discrimination against employees who oppose an employer's unlawful practice or participate in a proceeding.  42 U.S.C. § 2000e-(a); 42 U.S.C. § 1981(a); Andrews v. Lakeshore Rehab. Hosp., 140 F.3d 1405, 1412 (11th Cir. 1998).  In this regard, a plaintiff establishes retaliation by showing that: (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012); Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

### 1.     *Brown Engaged in Protected Activities When Meeting With Management and Complaining About Discriminatory Practices*

Although correctly concluding that Brown engaged in protected activities when meeting with Domingues/Reynoso in April 2017, filing a Charge against Wrigley in February 2018, and commencing this matter in August 2018, the District

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Court erroneously concluded that Brown did not engage in protected activities when

meeting with Arends/Slotterback in April 2017, filing a complaint in January 2018,

and discussing the complaint with Slotterback in January 2018.  (Doc. no. 84, R&R,

pp. 84-90).  In addition to formal complaints, informal complaints, including, but

not limited to, informally voicing complaints to superiors, are protected activities.

Rollins v. Fla. Dep't of Law Enf't, 868 F.2d 397, 400 (11th Cir. 1989); Tebo v.

Debary, 784 Fed. Appx. 727, 731 (11th Cir. 2019).

The District Court erroneously concluded that Brown did not engage in

protected activity during the April 2017 meeting when discussing the discriminatory

history at the Plant and the denial of Brown's applications.  However, on or about

April 4, 2017, Brown filed a complaint with Wrigley HR concerning the denials of

applications, resulting in a meeting/discussion concerning the denial of employment

in favor of lesser-qualified and lesser-experienced Caucasians with Domingues who

referred Brown to Slotterback.  (Stmnt., Brown Aff. ¶ 26, Ex. A-24, Meeting Email,

Ex. A-25, Spreadsheet Concerning Brown's Complaint and the My P&O response;

Brown Depo., pp. 111:15-114:10, 119:9-122:22, 124:2-10, 128:23-133:11).  Then,

Brown met with Arends concerning the denial of applications due to race and the

lack of minorities in leadership.  (Stmnt., Brown Aff. ¶ 27, Ex. A-26, Brown's E-

mail re Meeting with Arends, Brown Depo., pp. 127:1-10).  Assuming, *arguendo*,

Brown did not specifically use the word "race" during the meeting(s), a complaint

need only "reasonably convey" opposition to discrimination based upon race.

Pennington v. Huntsville, 261 F.3d 1262, 1265 n.1 (11th Cir. 2001). Based upon the

written complaint forming the basis of the meeting, the discussion with Domingues,

as well as the District Court's reference to Brown's testimony concerning the

"history of the factory" and Brown's denial of promotions despite qualifications, a

reasonable jury could conclude that, at a minimum, Brown was reasonably

conveying opposition to discrimination.

Similarly, the District Court erroneously concluded Brown did not engage in

protected activity when meeting with Slotterback/Reynoso concerning the written

complaint. During the meeting, Slotterback stated the whole leadership team was

disappointed that Brown submitted the complaint. (Stmnt., Brown Aff. ¶ 35; Brown

Depo., pp. 146:7-148:10). Because the complaint was based upon retaliation

following complaints of discriminatory employment practices, (Stmnt., Brown Aff.

¶ 35; Brown Depo., pp. 142:3-5), Brown reasonably conveyed opposition to racial

discrimination.

Again, viewing the entire record, Brown established multiple protected

activities. However, the District Court concluded, based upon Brown's testimony,

the April 2017 and January 2018 meetings did not constitute protected activities.

Unlike Smith v. Wynfield Dev. Co., 451 F. Supp. 2d 1327 (N.D. Ga. 2006) where

the plaintiff complained about flexible work hours, Brown complained about, *inter*

*alia*, the denial of applications due to race and the lack of minorities in leadership and Slotterback specifically referenced leadership's disappointment with Brown's complaints.  (Stmnt., Brown Aff. ¶¶ 27, 35, Ex. A-26, Brown's E-mail re Meeting with Arends; Brown Depo., pp. 127:1-10, 142:3-5).  As discussed herein, throughout the relevant period, Brown repeatedly complained to management and HR concerning discriminatory employment practices and retaliation.

### 2.    *Appellees Subjected Brown to Several Adverse Actions Based Upon Brown's Complaints of Racial Discrimination*

The District Court erroneously concluded there is no evidence linking Brown's complaints to the subsequent denial of promotions, the adverse employment actions, or Brown's demotion.  (Doc. no. 89, Order, pp. 10-11).  However, to establish causal connection, the decisionmakers must be aware of the protected activity, which must not be wholly unrelated to the adverse action—close temporal proximity may be sufficient to  the causal connection.  Bass, 256 F.3d at 1119.  Where temporal proximity is lacking, causation may be inferred from a systemic retaliatory campaign.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2000).

First, the District Court erroneously concluded that there is no evidence linking the denial of promotions in May 2017, December 2017, and January 2018 to Brown's complaints from April 2017 through January 2018.  However, following

Brown's complaints from April 2017 to January 2018, Appellees denied applications

in May 2017, December 2017, and January 2018 while increasing workload,

prohibiting overtime, denying professional assistance, tainting reviews, and denying

applications.  (Stmnt., Brown Aff. ¶¶ 26-27, 29-31, 33, 35, Exs. A-24, A-26, A-29,

A-30, A-31, A-34; Brown Depo., pp. 94:16-95:13, 97:12-23, 100:3-102:2, 111:15-

114:10, 119:9-18, 124:11-126:3, 127:1-10, 142:3-146:6, 175:2-23, 190:2-192:23;

Da Silva Depo., pp. 35:19-36:6, 38:15-17, 82:1-17).  Appellees denied applications

during the same period as the complaints.  Moreover, shortly after Brown's January

2018 complaint, Slotterback stated the whole leadership team was disappointed in

Brown who complained about discrimination and retaliation.  (Stmnt., Brown Aff. ¶

35; Brown Depo., pp. 146:7-148:10).  As such, the record includes evidence that the

Hiring Managers were aware of the complaints and, therefore, a reasonable jury

could conclude that the application denials were retaliatory.

Second, the District Court erroneously conclude that there is no evidence

linking the discrimination complaints from April 2017 through January 2018 and the

increased workload, prohibited overtime, and denial of professional assistance.

Although Slotterback sent the e-mail prohibiting overtime within days of the April

2017 complaint and, thus, causation can be inferred by close temporal proximity, the

District Court concluded there was no evidence that Slotterback, who prohibited the

overtime, knew about the complaints.  However, shortly after Brown's My P&O

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

complaint in January 2018, Slotterback stated that the whole leadership team was disappointed. (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 146:7-148:10). Clearly, Slotterback, Reynoso, Arends, and others discussed Brown's complaints. Days after the April 2018 complaints, Appellees prohibited minority Shift Leads from taking overtime, forcing Brown to simultaneously perform as an Operator and Shift Lead, and Slotterback denied Brown's request for overtime to address the lack of adequate staffing. (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6, 175:11-23, 190:2-192:23). Finally, although the District Court concluded there was no evidence that Slotterback knew about the consequences of the adverse employment actions, despite safety concerns Brown raised during the meeting, Slotterback and Reynoso instructed Brown to continue operating the machines as instructed. (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 149:10-151:13). And, the denial of assistance when Brown's Line was understaffed adversely affected safety. (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6).

Third, the District Court summarily disregarded management's view of Brown and Wrigley's admission of an exclusionary culture. Although managements' disappointment with Brown's complaints may not facially constitute an adverse action, the temporal proximity of Slotterback's statements with Brown's complaints and the other adverse employment actions clearly evidence retaliatory animus. Moreover, despite the conclusion there was no evidence connecting the Inclusion

Survey with Wrigley's acknowledgement of a culture of exclusion, while Brown complained about racial discrimination, HR deemed it necessary to ask associates diversity, racial/ethnic differences, responses to discrimination, and racial jokes. (Stmnt., Brown Aff. ¶ 40, Ex. A-39, Inclusion Survey E-mail and Survey). Indeed, even Wrigley expressed the need to "promote a culture of inclusion at [Gainesville], which doesn't current exist and creates ongoing issues between associates at the site." (Stmnt., Brown Aff. ¶ 40, Ex. A-40, Grievance and Complaint Spreadsheet; Vento Depo., pp. 123:1-124:19).

Fourth, the District Court erroneously concluded there was no causal link between this litigation and Brown's demotion due to the passage of time. However, Appellees learned about the above-captioned case on August 30, 2018. In December 2018 (approximately three months after service was perfected), Wrigley announced the elimination of Brown's position—obviously, the decision occurred prior to the announcement. And, while the 3-month period may raise an inference of retaliation, plaintiffs may present additional evidence to establish the causal connection. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Brown presented additional evidence, including, but not limited to, the fact that no other department at the Plant was restructured. (Stmnt., Brown Aff. ¶ 42; Brown Depo., pp. 154:23-155:5; Da Silva Depo., pp. 41:13-19).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Furthermore, Brown was demoted despite positive reviews. Although Slotterback previously cited *purported* "conflict management" as the reason to oppose Brown's applications, when evaluating the Shift Leads impacted by the restructuring, Slotterback rated Brown the highest with respect to "conflict management." (Stmnt., Brown Aff. ¶ 21; Da Silva Depo., pp. 78:5-20). Brown's demotion despite the high rating clearly suggests retaliatory animus.

Moreover, Brown was demoted while Bowman (Caucasian Shift Lead displaced in separate restructuring) was permitted to perform, without a separation notice, "special projects" before selection as a Shift Lead instead of Brown. (Stmnt., Brown Aff. ¶¶ 42-43; Brown Depo., pp. 155:10-156:0). Brown was not afforded the same preferential treatment. Appellees' willingness to accommodate Bowman instead of Brown shows the intent to punish Brown.

Again, the District Court simply disregarded evidence of employment practices outside the Process. Although Slotterback's position was eliminated during the restructuring, Wrigley did not give a separation notice to Slotterback, who was given another Line Manager position without an interview in violation of the Process. (Stmnt., Brown Aff. ¶ 43, Ex. A-8, Process). Although the District Court finds this fact "irrelevant," it evidences the willingness to accommodate Caucasian employees, while demoting and punishing Brown who complained about racial discrimination.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

### 3.    *The Proffered Reasons for the Adverse Actions Are Pretextual*

Finally, the District Judge accepted the Magistrate Judge's erroneous, alternative conclusion that Brown failed to establish pretext related to the reasons Appellees offered for the adverse employment actions.  Once the *prima facie* retaliation case is established, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action, which the plaintiff may demonstrate as pretextual.  E.g., Meeks v. Comput. Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (denying summary judgment, where the plaintiff testified regarding the existence/nature of retaliation after complaints).  Courts look at the same issues and factors governing discriminatory pretext.  E.g., Alvarez, 610 F.3d at 1265-66.

First, the District Court disregarded the blatant racial component to the restructuring.  Only minority Shift Leads were demoted or separated during the restructuring.  (Stmnt., Brown Aff. ¶ 43).  Despite Slotterback's high evaluation of Brown, Appellees sought to accommodate Bowman rather than Brown or any of the other minorities affected by the restructuring.  Appellees sent a clear message—if you complain about discrimination, things can always get worse.

Second, the District Court rejected the discriminatory and retaliatory nature of Brown's *purported* rankings during the restructuring.  However, Da Silva (Hispanic) decided which Managers would rate the Leads.  (Da Silva Depo., pp. 46:14-47:13).    Brown was rated by Caucasians Slotterback, Steve Veal

(Maintenance Leader) and Rodney Helton—Helton and Veal did not supervise Brown. (Da Silva Depo., pp. 72:8-73:13). As such, Veal's and Helton's so-called evaluations are not performance based. And, as previously discussed, Slotterback advised Brown that the leadership team, including Veal and Helton, was "disappointed" due to Brown's complaints. Clearly, a reasonable jury could conclude that these evaluations were pretextual.

Third, the District Court ignored that Brown did not wish to be demoted. Because Slotterback advised Brown that the Afternoon Shift would be displaced, Brown had no choice but to select demotion to Operator. (Stmnt., Brown Aff. ¶ 42; Brown Depo., pp. 157:6-163:6). Brown had no reason to doubt Slotterback's statements concerning displacement despite Brown's repeated applications for promotions. Put simply, the weakness, implausibility, inconsistency, and contradiction in the proffered reasons coupled with the subjective evaluations involving Caucasians and deviation from standard procedure establish sufficient evidence of pretext.

**D.    The District Court Erred When Concluding Brown Failed to Establish a Convincing Mosaic of Evidence Showing Discriminatory Intent**

The District Court erred when concluding Brown failed to establish a convincing mosaic of evidence showing discriminatory intent. (Doc. no. 85, Order, p. 8). However, the Eleventh Court of Appeals explained,

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

> A Plaintiff may raise a reasonable inference of the employer's discriminatory intent through various forms of circumstantial evidence. *Yet, no matter its form, so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is proper.*

Smith v. Lockheed-Martin Corp., 644 F. 3d 1321, 1328 (11th Cir. 2011) (emphasis added). The "convincing mosaic" may be shown by (1) suspicious timing, ambiguous statement, and other circumstances suggesting discriminatory intent, (2) systematically better treatment of similarly-situated employees, and (3) that the employer's justification is pretextual. Lewis v. Union City, 934 F.3d 1169, 1185 (11th Cir. 2019). If ever there were a "convincing mosaic," this is the case.

While interning with Wrigley, Brown obtained a Bachelor's in Business Administration. (Stmnt., Brown Aff. ¶ 4, Ex. A-1, Resume; Brown Depo. pp. 10:2-24; Da Silva Depo., pp. 83:5-6; Vento Depo., pp. 47:9-16). After serving as an Operator for years, Brown became Shift Lead. (Stmnt., Brown Aff. ¶¶ 6, 12, 15; Brown Depo., pp. 12:18-13:19, 14:19-15:22, 16:7-17:8; Vento Depo., pp. 49:6-13, 47:17-22, 48:25-49:3). While still operating machines as Shift Lead, Brown trained Leads, managed Lines, and served as Safety Champion. (Stmnt., Brown Aff. ¶¶ 15-17, 19,; Brown Depo., pp. 17:14-25, 18:9-24, 26:8-16, 29:18-31:18, 32:2-33:10; Vento Depo., pp. 50:20-51:8, 62:1-9, 72:22-23).

Despite stellar education and performance, Appellees denied lateral transfers while promoting lesser-qualified Caucasians—***systematic better treatment***.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Appellees denied Brown's application for Shift Lead in favor of Sexton, Caucasian

Mechanic without college degree who Brown then trained.  (Stmnt., Brown Aff. ¶

22; Brown Depo., pp. 85:1-15, 89:14-90:14, 108:23-110:4, 193:3-194:8; Vento

Depo., pp. 50:3-52:3, 73:11-74:10, 106:15-108:1, 108:24-109:3; Da Silva Depo., pp.

31:3-18, 32:10-15, 34:10-11, 82:24-82:4).   Appellees denied, without interview,

Brown's application for Shift Lead in favor of Ammons, Caucasian with high school

degree despite the requirement for a post-secondary degree.  (Stmnt., Brown Aff. ¶

23; Brown Depo., pp. 85:1-15, 90:19-25, 92:15-23, 95:14-96:8; Da Silva Depo., pp.

31:3-9, 32:21-25, 34:5-9, 82:24-83-1; Vento Depo., pp. 50:3-52:3).

On April 4, 2017, Brown complained about racial discrimination to Wrigley

HR.  (Stmnt., Brown Aff. ¶ 26; Brown Depo., pp. 111:15-114:10).  Brown then

meets with Domingues, Reynoso, and Arends, who take no action while deferring

Brown back to Slotterback, source of the discrimination.  (Stmnt., Brown Aff. ¶¶ 26,

27; Brown Depo., pp. 119:9-18, 119:21-122:22, 124:2-126:9, 127:1-10, 128:23-

133:11).  Appellees refused to take remedial action.

Following Brown's complaints, Appellees passed-over Brown for promotion,

in violation of the Process, in favor of lesser-qualified Caucasians without degrees—

*suspicious timing, systemic better treatment, ambiguous statements, and pretext*.

Appellees denied Brown's application for Shift Lead in favor Mayfield, Caucasian

without a degree who was awarded "interim position" because Brown was

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

*purportedly* not "ready."  (Stmnt., Brown Aff. ¶ 29; Brown Depo., pp. 99:19-21, 100:3-102:10, 106:7-19; Da Silva Depo., pp. 34:12-35:5, 82:9-11).    Appellees denied Brown's application for Line Lead in favor of Collins, Caucasian without degree who was awarded an "interim position," because Brown did not have a Master's degree which was not a requirement.  (Stmnt., Brown Aff. ¶ 30, Brown Depo., pp. 94:4-95:13-97:12-23, 108:7-22; Da Silva Depo., pp. 35:8-36:6, 82:14-17).    Appellees denied Brown's application for Process Lead in favor of Joy, Caucasian Operator without a degree who was awarded an "interim position," because Brown *purportedly* could not utilize Excel despite Brown's degree in Business Information Systems.  (Stmnt., Brown Aff. ¶ 31; Brown Depo., pp. 14:18-22, 105:9-106:5, 107:13-108:6; Da Silva Depo., pp. 36:22-38:6, 38:15-20, 82:1-5, 82:14-17).

In addition to refusing to promote, Appellees subjected Brown to adverse employment actions—***suspicious timing and discriminatory intent***.    Appellees increased Brown's workload.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6).  Appellees prohibited Brown from working overtime.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6, 175:11-23, 190:2-192:23).  Appellees denied Brown professional assistance.  (Stmnt., Brown Aff. ¶ 33; Brown Depo., pp. 142:7-146:6).  Appellees tainted Brown's professional reviews.  (Brown Depo., pp. 175:2-10).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

Brown filed, in January 2018, another complaint about Wrigley's unlawful employment practices—***suspicious timely and discriminatory intent***.  (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 142:3-5).  Shortly thereafter, Slotterback stated the leadership team was disappointed Brown submitted the complaint.  (Stmnt., Brown Aff. ¶ 35; Brown Depo., pp. 146:7-148:10).  And, Slotterback then directed Brown to "tone it down."  (Stmnt., Brown Aff. ¶ 35, Brown Depo., pp. 146:22-150:3).

In February 2018, Brown filed Charges of Discrimination.  (Stmnt., Brown Aff. ¶ 38; Brown Depo., pp. 171:17-172:21).  Brown again complained to Martin about racial discrimination in hiring practices.  (Stmnt., Brown Aff. ¶ 39; Brown Depo., pp. 174:5-21).  Wrigley still took no remedial action.  (Stmnt., Brown Aff. ¶ 39; Brown Depo., pp. 172:25-173:17).

Meanwhile, Wrigley acknowledged the culture of discrimination and exclusion—***discriminatory intent***.  On March 8, 2018, Wrigley asked employees about racial discrimination.  (Stmnt. Brown Aff. ¶ 40).  Even Martin expressed the Plant had a culture of exclusion.  (Stmnt. Brown Aff. ¶ 40; Vento Depo., pp. 123:1-124:19).

On August 24, 2018, Brown commenced this matter—***suspicious timing, discriminatory intent, systematic better treatment, and pretext***.  Shortly thereafter, Wrigley demoted Brown.  (Stmnt., Brown Aff. ¶ 42; Brown Depo., pp. 154:23-155:5; Da Silva Depo., pp. 41:13-19).  Meanwhile, Appellees awarded Bowman (Caucasian)

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

a Shift Lead position while awarding Slotterback a Line Manager position without interview.  (Stmnt., Brown Aff. ¶¶ 42-43; Brown Depo., pp. 155:10-156:10).  After Brown filed another Charge and was deposed in this matter, a noose was placed near Brown's workstation.  (Brown Aff. ¶ 42, Photograph).

Despite hundreds of African-American employees at any given time, only three African-Americans have been promoted into management—***discriminatory intent***.  (Stmnt., Brown Aff. ¶ 48; Vento Depo., 40:3-41:3, 102:18-24; Da Silva Depo., pp. 21:8-24:24).  Wrigley admits this is "unusual."  (Vento Depo., pp. 103:1-24).  However, the record clearly establishes multiple complaints of racial discrimination by African-Americans at the Plant.  (Stmnt., Brown Aff. ¶¶ 47-48; Brown Depo., pp. 185:18-186:24; Vento Depo., pp. 16:23-17:22, 18:11-21, 19:1-8, 19:11-20:23, 21:15-26:2, 40:3-41:3, 74:13-20, 75:2-15, 83:17-84:21, 86:17-101:15, 102:18-24, 103:1-24; Da Silva Depo., pp. 17:6-22, 21:8-24:24).

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

# VI.    CONCLUSION

For the foregoing reasons, as well as those fully articulated in the Objection to Final Report and Recommendation, Brown respectfully requests that the Court reverse the District Court's Order granting Defendants-Appellees' Motion for Summary Judgment and remand the above-captioned case to the District Court with instructions to deny the motion and permit the above-captioned case to proceed to trial.

Respectfully submitted this 21st day of May, 2021.

MOLDEN & ASSOCIATES

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Appellant-Plaintiff Marius Brown*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

This document complies with the requirements in Appellate Rule 32 because, excluding the parts of the document exempted by Appellate Rule 32(f), this document contains, as indicated by Microsoft Word, approximately 11,262 words in 14-point Times New Roman Font.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Appellant's Brief

## CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I certify that

I have served a true and correct copy of the within and foregoing on all parties by

CM/ECF and/or United States Mail as follows:

Respectfully submitted this 21st day of May, 2021.

MOLDEN & ASSOCIATES

_____

REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
 (404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff-Appellant Marius Brown*