**No. 21-11328**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

━━━━━━━━━━━━━━◆━━━━━━━━━━━━━

**MARIUS BROWN,**

Appellant-Plaintiff,

v.

**WRIGLEY MANUFACTURING COMPANY, LLC, MATT ARENDS and
FRANK SLOTTERBACK,**

Appellees-Defendants.

━━━━━━━━━━━━━◆━━━━━━━━━━━━

**On Appeal from the United States District Court for the
Northern District of Georgia
Gainesville Division
2:18-cv-00141**

---

**APPELLEES' BRIEF**

---

**Attorney for Defendants-Appellees:**
Thomas R. Davies, Esq.
Laura Bailey Gallagher, Esq.
Harmon & Davies, P.C.
2306 Columbia Avenue
Lancaster, PA 17603
Telephone: 717-291-2236
Email: tdavies@h-dlaw.com
Email: lgallagher@h-dlaw.com

July 28, 2021

## CERTIFICATE OF INTERESTED PERSONS

COMES NOW Appellees Wrigley Manufacturing Company, LLC, Matt Arends, and Frank Slotterback ("Appellees") and, pursuant to Rule of the United States Court of Appeals for the Eleventh Circuit 26.1, certify that, to the best of Appellees' knowledge, the following is a complete list of the persons and entities that have an interest in the outcome of the above-captioned case:

Arends, Matthew

Brown, Marius

Choi, Hee Won, Former Counsel for Plaintiff-Appellant

Cooper, Maryfrances T., Former Counsel for Defendants-Appellees

Davies, Thomas R., Counsel for Defendants-Appellees

Ebersole, Beth Ann, Former Counsel for Defendants-Appellees

Fuller, Clay J., U.S. Magistrate Judge, Northern District of Georgia

Gallagher, Laura Bailey, Counsel for Defendants-Appellees

Jennings, Kathleen J., Counsel for Defendants-Appellees

Klein, Rhonda L., Counsel for Defendants-Appellees

Mars, Incorporated, parent company of Wm. Wrigley Jr. Company, Inc., and Wrigley Manufacturing Company, LLC

Mars Wrigley Confectionery, LLC

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 2 of 36
Appellees' Brief

Mars Wrigley Confectionery US, LLC

Molden, Regina S., Counsel for Plaintiff-Appellant

Pearson, Todd Orlando, Counsel for Plaintiff-Appellant

Slotterback, Frank

Story, Richard W., U.S. District Judge, Northern District of Georgia

Wm. Wrigley Jr. Company, Inc.

Wrigley Manufacturing Company, LLC

No publicly held corporation owns 10% or more of the stock of Defendant Wrigley

Manufacturing Company, LLC, or the Wm. Wrigley Jr. Company, Inc., Mars,

Incorporated, or Mars Wrigley Confectionery, LLC.

Respectfully submitted this 28th day of July, 2021.

> HARMON & DAVIES, P.C.
>
> Thomas R. Davies, Esq.
> Laura Bailey Gallagher, Esq.
> 2306 Columbia Avenue
> Lancaster, PA 17603
> Telephone: 717-291-2236
> Facsimile: 717-291-5739
> Email: tdavies@h-dlaw.com
> Email: lgallagher@h-dlaw.com
>
> *Counsel for Appellees-Defendants*

# <u>TABLE OF CONTENTS</u>

Certificate of Interested Persons....................................................................1

Table of Contents.............................................................................................3

Table of Authorities........................................................................................5

I.      Statement Regarding Oral Argument...................................................7

II.     Statement of Issues on Appeal Presented for Review.........................8

III.    Statement of the Case.........................................................................9

IV.     Summary of Arguments.....................................................................16

IV.     Argument...........................................................................................17

        A.      The District Court Properly Evaluated the Entirety of the Evidence
                Presented by Both Parties........................................................17

        B.      The District Court Properly Concluded Brown's Discrimination
                Claim Failed............................................................................19

        C.      The District Court Properly Dismissed Brown's Retaliation
                Claim.......................................................................................24

                1.      Brown's Alleged Protected Activities..........................25

                        a.      April 2017 Meeting with Arends and Slotterback..........26

                        b.      January 2018 P&O Safety Complaint............................26

                        c.      January 2018 Meeting with Slotterback........................27

                2.      There Was No Causal Connection Between Brown's
                        Protected Activities and Adverse Employment Actions..........28

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 4 of 36
Appellees' Brief

a.   Brown's Non-Selection for Job Openings in October 2017 and January 2018..................................................28

b.   Brown's Allegations of Safety Concerns, Increased Workload, and Tainted Performance Reviews...............29

c.   January 2018 Meeting with Slotterback and Diversity & Inclusion Survey.........................................................30

d.   Wrigley's 2018 TAB Department Restructuring...........30

3.   Brown Failed to Establish Wrigley's Legitimate, Non-Retaliatory Reasons Were Pretextual......................................31

D.   The District Court Properly Concluded Brown Failed to Establish a Convincing Mosaic of Circumstantial Evidence.............................31

V.   Conclusion......................................................................................34

Certificate of Compliance........................................................................35

Certificate of Service...............................................................................36

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 5 of 36
Appellees' Brief

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 509 Fed. App'x 906, 911 (11th
    Cir. 2013) ...........................................................................................................28

*Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)..........23

*Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1227 (11th Cir. 1993).....................18

*Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).....................23

*Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001)..........16

*Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)................................... 16, 18

*Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016)...........24

*Lewis v. Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019). ..................................31

*Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994) ................24

*Paul v. Americold Logistics, LLC*, 450 Fed. App'x 850, 852 (11th Cir. 2012). .....21

*Rodriguez v. Miami Dade Cnty. Pub. House. & Cmty. Dev.*, 776 Fed. App'x 625,
    656 (11th Cir. 2019)............................................................................................24

*Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)...........27

*Thomas v. Cooper Light, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ....................28

*Turnes v. Amsouth Bank, N.A.*, 36 F.3d 1057, 1060-61 (11th Cir. 1994). ..............19

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 6 of 36
Appellees' Brief

## Statutes

42 U.S.C. § 1981. ................................................................... *passim*

42 U.S.C. § 2000e. ................................................................ *passim*

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 7 of 36
Appellees' Brief

## I.   <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to the Federal Rules of Appellate Procedure ("Appellate Rules") 34(a) and Eleventh Circuit Rule 28-1(c), Wrigley submits that the facts and legal arguments have been adequately presented in the record and briefs. Therefore, Wrigley does not request oral argument, as it would not aid the decisional process.

## II.    <u>STATEMENT OF ISSUES PRESENTED FOR REVIEW</u>

Brown has presented differing issues for review in the Civil Appeal Statement
and the Appellant's Brief.  In light of Brown's inconsistencies, Wrigley submits its
own Statement of Issues Presented for Review as follows:

1.    Whether the District Court applied the proper legal standards when
analyzing whether summary judgment in Wrigley's favor was appropriate as to
Brown's discrimination and retaliation claims?

2.    Whether the District Court applied the proper legal standards when
evaluating Brown's evidence offered to show a convincing mosaic of circumstantial
evidence of discriminatory and/or retaliatory intent?

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 9 of 36
Appellees' Brief

# III.    <u>STATEMENT OF THE CASE</u>

## A.    *Brown's Employment History at Wrigley Manufacturing Company*

Marius Brown's ("Brown") employment with Wrigley Manufacturing Company ("Wrigley) began in 2006 as a Machine Operator in the Processing Department.  (App. Vol. III, p. 3, ¶ 1).  Brown subsequently applied for, and was offered, an Operator position in the Sheeting Department and continued working in this position for approximately eight years.  (App. Vol. III, p. 4, ¶¶ 3, 4).  In 2015, Brown was offered the position of Shift Lead in the Wrapping Department, without having to apply for this role.  App. Vol. III, p. 4, ¶ 5.  After approximately a year and a half, Brown applied for and was offered the position of Shift Lead in the TAB Department, where he worked for approximately three years.  App. Vol. III, p. 4, ¶¶ 8, 9.  In October 2018, the TAB Department underwent a restructuring due to a change in sales and, as a result, Brown was transferred to the Senior Sheeting Operator in the Processing Department.  (App. Vol. III, ¶¶ 152, 153, 180).

## B.    *Brown's Performance History at Wrigley Manufacturing Company*

In 2016, Brown met with Line Manager Frank Slotterback several times to receive feedback as to his performance as a Shift Lead.  (App. Vol. III, ¶¶ 11-14).  Specifically, Slotterback discussed Brown's ability to manage conflict, which stemmed from several on-going situations with Brown's associates.  (App. Vol. III, pp. 5-6, ¶¶ 11, 14).  Memorializing these discussions, Line Manager Slotterback

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 10 of 36
Appellees' Brief

wrote in the Line Manager comments section of Brown's 2016 Performance and

Development Review ("PDR"):

> I see opportunity for Marius [Brown] to improve his ability to resolve
> conflict within his team and I have been working with him to do so. In
> addition to Performance on the Line needs improvement moving
> forward and will require good decision making on staffing for his
> respective shift.

(App. Vol. III, p. 7, ¶ 16).

### C.    *Brown's Job Applications*

In an 11-month period in 2017 and 2018, Brown applied for five different

positions at Wrigley. (App. Vol. II, p. 62). Out of these five roles, Brown was

invited to interview for four of these positions by hiring panels composed of different

associates, in accordance with Wrigley's standard hiring process. (App. Vol. II, p.

10, ¶ 24; p. 12, ¶¶ 27, 29; p. 14, ¶¶ 44, 47; p. 17, ¶¶ 61, 64, 65; p. 18, ¶¶ 74, 78).

Following each interview, Wrigley articulated detailed feedback on Brown's

interview performances which, ultimately, contributed to the reasons why Brown

was not selected for these positions. (App. Vol. III, pp. 15-16, ¶¶ 50-55; pp. 18-19,

¶¶ 66-70; p. 21, ¶¶ 80-84).

### 1.    *Shift Lead Packaging (Day Shift)*

Brown applied for the Shift Lead – Packaging (Day Shift) position in February

2017. (App. Vol. III, p. 11, ¶ 25). Initially, Line Manager Slotterback informed

Brown that he would not support Brown's application for this position; however,

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 11 of 36
Appellees' Brief

Brown was ultimately granted an interview. (App. Vol. III, p. 12, ¶ 29). The hiring panel consisted of Damien Parker (White), Luis Prieto (Hispanic/Latino), and Frank Slotterback. (App. Vol. III, pp. 11-12, ¶ 27). The selected candidate, a White male, had 18 years of experience at Wrigley and received a higher interview score (4.00) than Brown (3.00) based on their interview responses. (App. Vol. III, p. 12, ¶¶ 30-32).

### 2.    *Shift Lead Processing (Day Shift)*

Brown applied for the Shift Lead – Processing (Day Shift) position in March 2017. (App. Vol. III, p. 13, ¶ 34). At this time, Line Manager Slotterback did not support Brown's application for this position and, thus, Brown was not selected for an interview. (App. Vol. III, p. 13, ¶¶ 38, 39). The selected candidate, a White male, worked at Wrigley for more than 10 years and had been a former Shift Lead in the TAB Department. (App. Vol. III, p. 14, ¶ 42).

### 3.    *Line Lead Packaging*

Brown applied for the Line Lead – Packaging position in October 2017. (App. Vol. III, p. 14, ¶ 43). Line Manager Slotterback supported Brown's application for this position and, subsequently, Brown was granted an interview. (App. Vol. III, pp. 14-15, ¶¶ 46, 47). The hiring panel consisted of Cory Adams (African American) and Jim Concannon (White). (App. Vol. III, p. 14, ¶ 44). Because Brown failed to demonstrate the same competencies and attributes during the interview process as

other candidates, he was not selected for this role. (App. Vol. III, p. 16, ¶ 55). The selected candidate, a White male, had been working in a temporary role outside of his normal position to develop his leadership skills, was a previous Shift and Process Lead and, lastly, the selected candidate was rated higher (3.67) than Brown (2.5) based on their interview responses. (App. Vol. III, pp. 16-17, ¶¶ 56-58).

### 4.    *Line Lead Processing*

Brown applied for the Line Lead – Processing position in October 2017. (App. Vol. III, p. 17, ¶ 60). Line Manager Slotterback supported Brown's application for this position and, subsequently, Brown was selected to interview. (App. Vol. III, p. 18, ¶¶ 63, 64). The hiring panel consisted of Blake Barron (White), Jim Concannon (White), and Cory Adams (African American). (App. Vol. III, p. 14, ¶ 44). Brown was not selected for this role because Brown failed to provide responses that were reflective of an associate who was ready for the increased responsibility of a Line Leader. (App. Vol. III, p. 18, ¶ 66). In contrast, the selected candidate, a White female, provided specific examples of her strengths as a Line Leader and was rated higher (4.11) than Brown (2.83) based on their interview responses. (App. Vol. III, p. 19, ¶¶ 71, 72).

### 5.    *Process Lead (Day Shift)*

Brown applied for the Process Lead – Day Shift position in January 2018. (App. Vol. III, p. 20, ¶ 73). Line Manager Slotterback supported Brown's

application for this position and, subsequently, Brown was selected to interview. (App. Vol. III, p. 20, ¶¶ 77, 78).   The hiring panel consisted of Eyda Yancy (Hispanic/Latina), Jodi Collins (White), and Jeffrey Edwards (African American). (App. Vol. III, p. 20, ¶ 74).  Brown was not selected for this role because he provided vague responses with limited detail, such that the hiring panel did not sense he was ready for the increased responsibility and skills required of a Process Lead.  (App. Vol. III, p. 21, ¶¶ 80, 84).  Instead, the successful candidate, a White male, provided significant detail and specific examples to similar questions posed to Brown, had shadowed other Process Leads, and was familiar with Microsoft Excel graphs and spreadsheets.  (App. Vol. III, p. 22, ¶ 84).

### D.    *Brown's Complaints to Wrigley*

Beginning in April 2017, Brown submitted several informal and formal complaints to associates at Wrigley regarding a variety of concerns, none of which explicitly or implicitly conveyed Brown's beliefs that he had been discriminated and retaliated against because of his race.  (App. Vol. III, pp. 42-44, ¶¶ 189, 190, 195-201).

### 1.    *April 2017 Meetings with Domingues and Line Manager Slotterback*

Brown's first complaint was submitted through the My P&O portal in April 2017 and discussed that he "was denied an opportunity/interview for a position just

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 14 of 36
Appellees' Brief

because my leader didn't support the move. Considering my background and history

with the company, I think I should have at least got an interview." (App. Vol. III, p.

24, ¶¶ 92, 98). The subsequent e-mails between Brown and the P&O associate made

no reference to a claim of race discrimination, either implicitly or explicitly. (App.

Vol. III, p. 25, ¶ 101). Brown further discussed his complaint with Juliana da Silva

Domingues, another P&O associate. (App. Vol. III, p. 26, ¶ 104, 105). Domingues

attested that Brown never complained or reported to her that he was not promoted

due to his race. (App. Vol. III, p. 42, ¶189). Brown later admitted that he did not

remember if he told Domingues that he believed he was denied an interview because

of his race. (App. Vol. III, p. 26, ¶ 104, 106).

Also in April 2017, Brown met with Line Manager Slotterback to discuss why

Slotterback did not support him for the two positions he applied for, to which

Slotterback explained that he was concerned about Brown's ability to resolve

conflict and make quality decisions in regards to staffing resource allocation. (App.

Vol. III, p. 24, ¶¶ 107, 109). Slotterback assured Brown that he was willing to work

with him to improve in these areas, that he believed Brown could get there, and that

he was looking out for Brown. (App. Vol. III, p. 25, ¶ 111).

### 2. *January 2018 My P&O Complaint and Conversation with Slotterback*

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 15 of 36
Appellees' Brief

In January 2018, Brown submitted a complaint via the My P&O portal that discussed safety concerns. (App. Vol. III, p. 30, ¶¶ 126, 129). Specifically, Brown's complaint concerned the lack of overtime granted, how his shift was short-staffed and how this caused Brown to operate machinery while also acting as Shift Lead. (App. Vol. III, p. 30-31, ¶¶ 130-132). As a result, Brown had subsequent meetings with Line Manager Slotterback and other associates, both of which Brown secretly recorded. (App. Vol. III, p. 31, ¶¶ 133-135). Brown did not mention, explicitly or implicitly, any concerns or opposition to race discrimination and/or retaliation during these meetings. (App. Vol. III, p. 34, ¶¶ 140-144). Instead, Brown informed Slotterback that he was not angry with him and indicated that he could use a refresher on machine training. (App. Vol. III, p. 34, ¶¶ 144, 147).

# IV.    <u>SUMMARY OF ARGUMENTS</u>

Wrigley submits the following Summary of Arguments:

1.     The District Court properly considered all evidence and reasonable factual inferences drawn therefrom in the light most favorable to Brown, as the non-moving party.

2.     The District Court properly found that Brown failed to produce sufficient probative evidence of pretext to rebut Defendant's legitimate non-discriminatory reason for Brown's non-selections.

3.     The District Court properly found that Brown failed to establish a *prima facie* case of retaliation under Title VII and Section 1981.

4.     The District Court properly found that no reasonable jury could conclude that Wrigley discriminated or retaliated against Brown based on a convincing mosaic of circumstantial evidence.

# V.    <u>ARGUMENT</u>

## A.    THE DISTRICT COURT PROPERLY EVALUATED THE ENTIRETY OF THE EVIDENCE PRESENTED BY BOTH PARTIES.

Brown improperly contends that the District Court would have found "compelling evidence of discrimination and retaliation" if it did not improperly weigh or disregard evidence. (Appellant's Brief, p. 35). Brown's argument is baseless, as the District Court appropriately "view[ed] the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve[d] all reasonable doubts about the facts in favor of the non-moving party." *Comer v. City of Palm Bay, Florida*, 265 F.3d 1186, 1192 (11th Cir. 2001). The Magistrate Judge's meticulous examination of the record is evidenced by its 108-page Final Report and Recommendation, which was recognized as a thorough analysis, well-reasoned, and adopted for all purposes by the District Judge. (App. Vol. XIII, pp., 7, 13). Further, the Court's finding that Brown's "mere conclusions and unsupported statements" were insufficient to defeat summary judgment is fully aligned with Eleventh Circuit precedent. (App. Vol. XIII, pp. 5-6 (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)).

By way of example, Brown overlooks the obvious contradiction and argues the District Court accepted "thinly veiled, subjective comments" about Brown's interview performances, while Brown submitted nothing other than his own

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 18 of 36
Appellees' Brief

subjective, self-serving statements in support of his claims. (Appellant's Brief, p. 36). Brown repeatedly touts his alleged superior professional qualifications and interview performances; yet, the only evidence Brown cites to support this contention is his own testimony that his interview responses were "clear, competent, and professional," (App. Vol. VII, pp. 17, 25, 27, 29, 60, 65-67), using the same imprecise, boilerplate phrase to describe each interview. On the other hand, the Court properly considered evidence of Wrigley's detailed evaluations and feedback from multiple associates regarding Brown's performance and qualifications. Moreover, the Court properly refused to assume facts not in the record in the face of Brown's repeated mischaracterizations of the evidence. (App. Vol. XII, p. 165).

Brown's contention that the Court improperly weighed the evidence is an unavailing attempt to mask Brown's own failure to submit significantly probative evidence of Wrigley's alleged discrimination and retaliation. The Court did not "disregard" evidence, as Brown contends, but fully discussed the evidence presented by both parties and consistently viewed the evidence "in the light most favorable to Plaintiff." (App. Vol. XII, pp. 81, 133, 135, 153, 164, 165). Simply because the Court reviewed the evidence and found Brown's argument lacking does not mean the Court administered an improper standard of review. Rather, it shows that the evidence submitted by Brown was insufficient to demonstrate that Wrigley acted with discriminatory or retaliatory intent. The District Court fully considered

Brown's evidence, and appropriately recognized that Brown's self-serving statements, without more, were insufficient to create a genuine issue of material fact. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## B.    THE DISTRICT COURT PROPERLY CONCLUDED BROWN'S DISCRIMINATION CLAIM FAILED.

Brown alleges that the District Court disregarded his evidence and, further, "simply ignored the entire record" when finding no reasonable jury could conclude that Wrigley's legitimate, non-discriminatory reasons for Brown's non-selection were pretext for intentional discrimination. (Appellant's Brief, p. 44). Contrary to Brown's outrageous assertion, the District Court correctly required that Brown needed to "introduce *significantly probative evidence* showing that [Wrigley's] asserted reason is merely pretext for discrimination" in order to avoid dismissal of his claims. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1227 (11th Cir. 1993) (emphasis added).

The District Court did not "favor" Wrigley when evaluating the evidence, as Brown contends. Rather, the Court recognized that Brown failed to carry his burden to "demonstrate that the proffered reason was not the true reason" for Brown's non-selection for each position. (Appellant's Brief, p. 36; App. Vol. XIII, p. 6). In setting forth its legitimate reasons, Wrigley provided detailed assessments of the reasons Brown's performances in his interviews were inadequate. For example, one

interviewer, Cory Adams, explained that Brown's interview responses showed a lack of preparation prior to his interview and, further, that Brown's answers failed to connect in a clear fashion how he as a leader has worked to develop individuals on his own team. (App. Vol. III, p. 16, ¶¶ 52-53). Given Brown's undeveloped answers, the hiring panel did not select Brown. (App. Vol. III, p. 15, ¶ 51). In his rebuttal, Brown submits only his personal opinion that he "clearly, competently, and professionally" performed during each interview—which the District Court found was not reasonably specific enough to rebut Wrigley's articulated reasons. Brown contradictorily contends that Wrigley's reasons should fail as they do not reference "specific questions and responses" presented during his interviews. (Appellant's Brief, p. 41). However, the District Court properly stated that Wrigley was not required to "delve into specific questions and answers to support evaluations of plaintiff's interview." (App. Vol. XII, p. 144). Rather, the Court correctly held that Wrigley met its "exceedingly light" burden of production in presenting its legitimate, non-discriminatory reasons for its non-selection decisions. (App. Vol. XII, p. 124; App. Vol. XIII, p. 9); *Turnes v. Amsouth Bank, N.A.*, 36 F.3d 1057, 1060-61 (11th Cir. 1994).

Wrigley also presented a substantiated reason for the fifth position that Brown applied for, but was not granted an interview. Specifically, Line Manager Slotterback did not support Brown's application for the Shift Lead Processing (Day

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 21 of 36
Appellees' Brief

Shift) position because at that time Slotterback had serious concerns regarding

Brown's competencies in conflict management and decision-making.  (App. Vol.

III, p. 13, ¶ 38).  11-14, 28, 108-110.  Brown's need for improvement in these areas

was well-documented by Line Manager Slotterback in July 2016 and October 2016,

which was well before Brown's application for this position.  (App. Vol. III, pp. 5-

6, ¶¶ 11-14).  Specifically, Slotterback memorialized his feedback in Brown's 2016

Performance and Development Review:

> I see opportunity for Marius [Brown] to improve his ability to resolve
> conflict within his team and I have been working with him to do so.  In
> addition [sic] Performance on the Line needs improvement moving
> forward and will require good decision making on staffing for his
> respective shift.

(App. Vol. III, p. 7, ¶ 16).  Brown argues that the District Court "lent no weight" to

the fact that Brown was rated the highest with respect to "conflict management"

(Appellant's Brief, p. 40).  However, this argument overlooks the undisputed fact

that this rating was given during Wrigley's restructuring, which occurred

approximately 22 months *after* Brown received Slotterback's feedback.

(Appellant's Brief, p. 40; App. Vol. III, p. 7, ¶ 16, p. 35, ¶ 152).  The District Court

also properly stated Brown must do more than simply refute the truth of

Slotterback's opinions of Brown's performance; rather, "[h]e must create an issue

of fact as to whether Slotterback sincerely believed he was deficient in those areas."

(App. Vol. XII, p. 125).  Other than his personal opinion, Brown failed to submit

evidence showing Slotterback did not sincerely believe his assessment of Brown's conflict management skills.  (App. Vol. XII, pp. 127-128).  Rather than evidencing pretext, this timeline of events demonstrates that Brown received Slotterback's conflict management feedback and, as a result, was making improvement.

Next, Brown continues to overstate his "stellar" performance and superior qualifications, namely his bachelor's degree, which he argues made him more qualified than the other job candidates.  (Appellant's Brief, pp. 36, 44).  Though Brown contends the District Court ignored the fact that he had a Bachelor's Degree, the Court properly considered the selected candidates' qualifications in their entirety, not only the type of degree each possessed.  For example, the Court noted that while the selected candidate for the Shift Lead Processing role, only possessed a high school degree, he had sixteen years of experience working at Wrigley which was five more years than Brown.  (App. Vol. XII, p. 133).  Similarly, the Court also observed that the selected candidate for the Process Lead position had a technical degree and engineering courses which were more relevant to the position which was an engineering role. (App. Vol. XII, p. 151).  The Court evaluated the remaining chosen candidates in the same manner, finding that the selected candidates were not less qualified than Brown, to the extent that no reasonable person could have selected them over Brown.  (App. Vol. XII, p. 145); *Paul v. Americold Logistics, LLC*, 450 Fed. App'x 850, 852 (11th Cir. 2012).  Brown's argument that he was more qualified

for every role because he had a Bachelor's Degree is unavailing as the District Court properly assessed the relevance of his degree to each role. Regarding Brown's alleged "stellar" performance, the District Court appropriately recognized that Brown routinely overstated his "Meets Expectations" ratings on his performance reviews, which were insufficient to establish pretext. (App. Vol. XII, p. 138; App. Vol. XIII, pp. 8-9). Moreover, the District Court properly concluded that none of the evidence of Brown's satisfactory performance was sufficient to directly refute Wrigley's sincere belief in its reasons for Brown's non-selection. (App. Vol. XII, p. 138; App. Vol. XIII, p. 9).

Brown next contends that the District Court overlooked Wrigley's alleged "culture of exclusion" and sham hiring panels. (Appellant's Brief, p. 46). First, Brown's allegations of an exclusionary culture at Wrigley are unsupported by the record. The District Court correctly recognized that Brown mischaracterized as an alleged "admission" a comment in a document that summarized a meeting between two People & Organization associates and a Diversity & Inclusion (D&I) leader that took place in July 2017. (App. Vol. XII, p. 175). Moreover, the Court correctly recognized that the March 2018 D&I survey to which Brown cited in support of this claim had nothing to do with the aforementioned July 2017 comments and, thus, were not probative. (App. Vol. XII, p. 175). Given Brown's clear

mischaracterization of the facts, the District Court was correct in finding this was not indicative of pretext or, further, that Wrigley's hiring panels were "irrelevant."

In finding Brown failed to produce sufficient evidence of pretext, the District Court appropriately cited *Chapman v. AI Transport*, which states that "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." (App. Vol. XIII, p. 9 (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)). For the reasons set forth above, Brown failed to meet Wrigley's legitimate reasons head on and rebut them with "significantly probative evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993). Accordingly, the District Court properly dismissed Brown's discrimination claim.

## C.   THE DISTRICT COURT PROPERLY DISMISSED BROWN'S RETALIATION CLAIM.

Brown next argues that the District Court erroneously concluded that he failed to establish a *prima facie* case of retaliation. (Appellant's Brief, p. 48). Specifically, Brown argues that the Court incorrectly held that (1) three of Brown's five complaints were not protected activities; (2) there was no evidence linking Brown's

protected activity to subsequent adverse employment actions; and (3) Brown failed

to establish Wrigley's legitimate, non-retaliatory reasons were pretextual.

(Appellant's Brief, pp. 48-57).  In conducting its analysis, the Court properly applied

the *McDonnell Douglas* burden-shifting framework, requiring Brown to

demonstrate a *prima facie* case of retaliation by showing "he (1) engaged in

statutorily protected activity; (2) suffered an adverse employment action; and (3)

there is a causal connection between the protected activity and adverse action."

(App. Vol. XII, pp. 159-160 (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013,

1021 (11th Cir. 1994)).

## 1. *Brown's Alleged Protected Activities*

Brown contends the District Court erred in finding he did not engage in

protected activity when (1) Brown met with Matt Arends and Line Manager

Slotterback in April 2017; (2) Brown filed a P&O complaint in January 2018

alleging safety concerns; and (3) Brown's January 2018 meeting with Slotterback

and Reynoso regarding his safety concerns.  (Appellant's Brief, pp. 48-50).  To

constitute protected activity, however, Brown's complaints must explicitly or

implicitly communicate his belief that Wrigley's practice was unlawful

discrimination.  *Rodriguez v. Miami Dade Cnty. Pub. House. & Cmty. Dev.*, 776

Fed. App'x 625, 656 (11th Cir. 2019) (citing *Furcron v. Mail Centers Plus, LLC*,

843 F.3d 1295, 1311 (11th Cir. 2016).  After a thorough analysis of the record, the

District Court correctly decided that the foregoing complaints could not qualify as protected activity. (App. Vol. XII, pp. 162-3; App. Vol. XIII, pp. 12-13).

### a.      *April 2017 Meeting with Arends and Slotterback*

First, Brown contends he "reasonably convey[ed]" his opposition to race discrimination during his April 2017 conversations with Matt Arends and Line Manager Slotterback. (Appellant's Brief, p. 50). Once again, this is an overstatement of the record which the District Court properly refused to adopt. In its assessment, the District Court relied heavily on Brown's own deposition testimony when evaluating the content of Brown's conversations with Plant Manager Arends and Line Manager Slotterback. (App. Vol. XII, pp. 165; App. Vol. XIII, p. 12). The Court found the relevant testimony did not substantiate that Brown did explicitly or implicitly reference race during these meetings; nor did Brown claim that he discussed race at all during these meetings. (App. Vol. XII, p. 165). Thus, the District Court properly concluded that no reasonable jury could find Brown participated in statutorily protected activity during these conversations. (App. Vol. XII, p. 165).

### b.      *January 2018 P&O Safety Complaint*

Again, Brown argues he reasonably conveyed his opposition to race discrimination when he filed a P&O complaint in January 2018 regarding his safety concerns. (Appellant's Brief, p. 50). Specifically in this complaint, Brown

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 27 of 36
Appellees' Brief

discussed that his shift was under-staffed and he was having to spend too much time operating machines while balancing other Shift Lead duties. (App. Vol. VII, pp. 31-32). In his appeal, Brown continues to mischaracterize the record and illogically claims this safety concern reasonably conveyed his opposition to race discrimination. The Court properly rejected this erroneous argument, finding Brown's January 2018 safety complaint could not "reasonably communicate, even implicitly, that Plaintiff felt the afternoon shift was purposefully understaffed because of the race of the Shift Leads." (App. Vol. XII, pp. 166-7).

### c.    *January 2018 Meeting with Slotterback*

Brown argues that his January 2018 meeting with Line Manager Slotterback should constitute protected activity; but this argument wholly ignores the lack of evidence to support such an assertion. Specifically, the District Court properly found that Brown never talked about race discrimination during this January 2018 meeting, nor did Brown imply that he felt the staffing issues occurred as a result of his prior complaints. (App. Vol. XII, p. 167). To decide that Brown's conversation with Slotterback constituted protected activity required a non-sensical leap the District Court was unwilling to accept. For these reasons, the Court appropriately found that no reasonably jury could find that Brown engaged in statutorily protected activity in January 2018.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 28 of 36
Appellees' Brief

## 2.    *There Was No Causal Connection Between Brown's Protected Activities and Adverse Employment Actions.*

Though the District Court found that Brown did engage in protected activity on three separate occasions, the District Court accurately assessed that Brown failed to establish a causal connection between these alleged protected activities and subsequent adverse employment actions.  (App. Vol. XII, pp. 163, 183).  The District Court applied the proper requirements Brown needed to show in order to establish a causal connection between his protected activity and the post-April 2017 adverse actions, which were that: (1) the decision-makers were aware of the protected conduct and (2) the protected activity and the adverse actions were not "wholly unrelated."  (App. Vol. XII, pp. 160-161 (quoting *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)).  Following this standard, the District Court completed a detailed assessment of every alleged adverse action posited by Brown.

## a.    *Brown's Non-Selection for Job Openings in October 2017 and January 2018*

The District Court dismissed any causal connection between Brown's April 2017 protected activity and his non-selection for positions that took place more than five months after Brown's complaint.  (App. Vol. XII, pp. 168-9).  Without more, the Court correctly noted that the lack of temporal proximity was insufficient to create an issue of fact regarding a causal connection and, accordingly, found that no reasonable jury could conclude Brown was denied any promotions because of any

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 29 of 36
Appellees' Brief

alleged retaliatory intent.  *See*, *e.g.*, *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 509 Fed. App'x 906, 911 (11th Cir. 2013) (citing *Thomas v. Cooper Light, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)).

> **b.      *Brown's Allegations of Safety Concerns, Increased Workload, and Tainted Performance Reviews***

First, the District Court appropriately dismissed Brown's weak allegations that his performance reviews were in some way "tainted."  The Court noted Brown was rated "Meets Expectations" on his 2017 performance review, the only review that occurred after Brown's alleged protected activities.  (App. Vol. XII, p. 169).  This satisfactory review cannot be considered an adverse action.  Next, Brown mischaracterizes an email from Line Manager Slotterback that requires Shift Leads, including Brown, to have overtime approved by Slotterback in advance.  Brown attempts to argue that he was adversely affected because his shift was understaffed and, subsequently, that Slotterback's email specifically targeted Brown. (Appellant's Brief, pp. 52-53).  However, the Court appropriately refrained from assuming facts not in the record when it observed that Slotterback was likely unaware of Brown's protected activity when he sent the overtime email.  (App. Vol. XII, p. 171).  Finally, Brown alleged his workload increased following his protected activity.  But the Court appropriately quashed this argument, noting that the record entirely lacks evidence that Line Manager Slotterback or My P&O intended for

Brown's shift to be purposely understaffed. (App. Vol. XII, p. 172). Furthermore, when Brown finally informed Slotterback that he felt his shift was understaffed in January 2018, Slotterback took actions to show Brown a resource-allocation exercise and to hire more associates for Brown's shift. (App. Vol. XII, pp. 173-4). Accordingly, the District Court properly concluded no reasonably jury could causally connect Brown's allegations to his April 2017 protected activity.

c.     ***January 2018 Meeting with Slotterback and Diversity & Inclusion Survey***

The District Court correctly dismissed Brown's mischaracterization of Line Manager Slotterback's expression of "disappointment," as such sentiments, without more, do not constitute an adverse employment action. (App. Vol., XII, p. 174). Further, the Court again dismissed Brown's continued mischaracterization of the D&I Survey, which was previously discussed, *supra*, in Section D.

d.     ***Wrigley's 2018 TAB Department Restructuring***

Brown finally posits that Wrigley commenced the TAB department restructure with the specific purpose of demoting Brown in retaliation for his protected activities. In response, the District Court correctly found there was insufficient evidence to link Brown's demotion to his alleged protected activities due to lack of temporal proximity between these events and, further, because there was no evidence showing the decisionmakers behind the restructuring and/or Brown's

competency assessments were even aware of Brown's protected activities.  (App.

Vol. XII, p. 183).  Accordingly, the Court properly found that no reasonably jury

could find a causal connection between the alleged adverse actions and his protected

activity.

### 3. Brown Failed to Establish Wrigley's Legitimate, Non-Retaliatory Reasons Were Pretextual.

The District Court correctly held that, even if Brown established a *prima facie*

case, he was still unable to rebut Wrigley's legitimate, non-retaliatory reasons.

Wrigley asserted the TAB Department restructure was due to a change in sales, a

claim that Brown does not dispute.  (App. Vol. XII, p. 180).  While Brown attempted

to argue that his competency assessment ratings and subsequent demotion were

retaliatory, the Court thoroughly detailed why none of Brown's arguments were

indicative of retaliation.  (App. Vol. XII, pp. 181-4).  Accordingly, the Court

properly dismissed Brown's Title VII and Section 1981 retaliation claims.

### D. THE DISTRICT COURT CORRECTLY CONCLUDED BROWN FAILED TO ESTABLISH A CONVINCING MOSAIC OF CIRCUMSTANTIAL EVIDENCE.

In an unavailing attempt to survive summary judgment, Brown submits that

he has presented a "convincing mosaic of circumstantial evidence" of Wrigley's

alleged discriminatory and retaliatory intent.  (Appellant's Brief, p. 57).  To do so,

Brown must present "evidence that demonstrates, among other things, (1)

'suspicious timing, ambiguous statements..., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019).

In his appeal, Brown largely recited the exact same facts he submitted in support of his discrimination and retaliation claims. In dismissing his final claim, the District Court properly found that Brown cannot reassemble insufficient and irrelevant evidentiary tiles to create a convincing mosaic of discriminatory or retaliatory intent. (App. Vol. XII, p. 154; App. Vol. XIII, p. 10). Though Brown submitted additional statistical evidence and complaints from other associates, the Court correctly held that the evidence lacked probative value as to Wrigley's discriminatory or retaliatory intent.

The District Court also properly found that Brown's alleged evidence of the string tied to a washroom closet door which he claims was a noose was not properly before the Court and if it were, it is not probative of retaliation. (App. Vol. XII, pp. 183-184, n. 17; App. Vol. XIII, p. 8, n. 4). The District Court correctly held that Brown's evidence was not probative of retaliation as it was not properly before the Court because there were no allegations of this incident in Brown's operative complaint. (App. Vol. XII, pp. 183-184, n. 17; App. Vol. XIII, p. 8, n. 4). *See Dukes v. Deaton*, 852 F.3d 1035, 1045 (11th Cir. 2017) ("A plaintiff may not amend her

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 33 of 36
Appellees' Brief

complaint through argument in a brief opposing summary judgment." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Ignoring this procedural requirement, Brown again submits this improper evidence in his Appeal. (Appellant's Brief, pp. 28-29). Alternatively, the District Court correctly observed that even if this improper evidence were considered, there was no evidence as to who placed the string inside the washroom, and no evidence that any person involved in this litigation had knowledge that Brown was being deposed at that time. (App. Vol. XII, p. 184, n. 17). Further, Wrigley established that the string was being used by a cleaning service to hold the door open to the washroom. (App. Vol. XII, p. 184, n. 17). Brown's inflammatory allegations are further examples of his mischaracterization of the record that has persisted throughout his arguments on summary judgement and this Appeal. Accordingly, the Court correctly held that none of the evidence supported a reasonable inference of discrimination, retaliation, or pretext sufficient to overcome Wrigley's legitimate reasons presented. (App. Vol. XII, pp. 154, 184; App. Vol. XIII, p. 7).

# VI.    <u>CONCLUSION</u>

For the foregoing reasons, Appellees Wrigley Manufacturing Company, Matt

Arends, and Frank Slotterback respectfully request that this Honorable Court affirm

the decision of the District Court's Order granting its Motion for Summary Judgment

and dismiss Marius Brown's appeal with prejudice.

Respectfully submitted this 28th day of July, 2021.

HARMON & DAVIES, P.C.

Thomas R. Davies, Esq.
Laura Bailey Gallagher, Esq.
2306 Columbia Avenue
Lancaster, PA 17603
Telephone: 717-291-2236
Facsimile: 717-291-5739
Email: tdavies@h-dlaw.com
Email: lgallagher@h-dlaw.com

*Counsel for Appellees- Defendants*

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 35 of 36
Appellees' Brief

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation set forth in Appellate Rule 32, as the brief contains 5,601 words in a 14-point Times New Roman font.

Brown v. Wrigley Manufacturing Company, LLC, *et al.*, No. 21-11328
Page 36 of 36
Appellees' Brief

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a true and correct copy of the within and

foregoing on all parties by CM/ECD and/or United States Mail as follows:

Regina S. Molden, Esq.
T. Orlando Pearson, Esq.
Molden & Associates
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303

Respectfully submitted this 28th day of July, 2021.

HARMON & DAVIES, P.C.

Thomas R. Davies, Esq.
Laura Bailey Gallagher, Esq.
2306 Columbia Avenue
Lancaster, PA 17603
Telephone: 717-291-2236
Facsimile: 717-291-5739
Email: tdavies@h-dlaw.com
Email: lgallagher@h-dlaw.com

*Counsel for Appellees-Defendants*